MARY A. LANGAN, APPELLANT, V. ROBERT BINFIELD ET
AL., APPELLEES.

FILED DECEMBER 2, 1896.   No. 6912.

1. **Lease of School-Lands:** REGISTRATION OF ASSIGNMENT. The stat-
   utes relating to the leasing of school-lands provide, among other
   things, that no assignment of a lease contract shall be valid unless
   the same be entered of record in the office of the commissioner of
   public lands and buildings. Other sections provide for the for-
   feiture of leases for non-payment of rent and the releasing of the
   land, with a further provision that the owner of any contract of
   lease so forfeited may redeem the same by paying all delinquen-
   cies and costs, at any time before such land is again sold or leased.
   *Held*, That the provision with regard to assignments is for the pro-
   tection of the state, and that no assignee obtains any right as
   against the state until the assignment has been entered of record.

2. ——: ——: RIGHT OF REDEMPTION. An assignee whose assign-
   ment has not been so entered of record is not entitled to redeem
   from a forfeiture of the lease.

APPEAL from the district court of Hall county. Heard
below before HARRISON, J.

*Abbott & Caldwell,* for appellant.

*W. H. Thompson, contra.*

IRVINE, C.

In 1890 William Harnan leased from the state cer-
tain school-lands in Hall county. Thereafter he assigned
the leases to his daughter, Mrs. Langan, the appellant.
The assignments were not entered of record in the office
of the commissioner of public lands and buildings. Mrs.
Langan, however, entered and made certain improve-
ments. Default having been made in the payments of
rent, notice was given of a proposed forfeiture of the
lease by sending such notice by means of registered letter
to Harnan, and also by newspaper publication. In the
view we take of the case, it is not necessary to pass upon
the validity of the notice. Payment not having been

made within the prescribed period the board of public lands and buildings declared a forfeiture of the lease. Thereafter Binfield applied in due form for a lease of the land, and paid to the county treasurer of Hall county the requisite rental, the treasurer issuing his receipt therefor. Before the commissioner of public lands and buildings had executed to Binfield a lease Mrs. Langan tendered to the treasurer of Hall county a sufficient sum to cover all delinquencies and costs, for the purpose of redeeming from the said forfeiture. The tender was refused and she instituted this action against Binfield, the county treasurer, and the commissioner of public lands and buildings for the purpose of enforcing her claim for redemption and enjoining the officers from executing any lease to Binfield. The district court found for the defendants and dismissed the case. Mrs. Langan appeals.

The statutes most particularly applicable to the case are sections 14 and 16 of chapter 80, article 1, Compiled Statutes. Section 14 provides for the leasing of unsold school lands and contains the following: "Upon a failure to pay the agreed rental for the period of six months from the time said payments are due, the said lease may be forfeited and fully set aside as provided in section sixteen of this act; and no assignment of such lease contract shall be valid unless the same be entered of record in the office of the commissioner of public lands and buildings." Section 16 provides for the forfeiture of leases, and closes as follows: "The owner of any contract of sale or lease so forfeited may redeem the same by paying all delinquencies and costs at any time before such land is again sold or leased." A question much discussed in the briefs is whether by the receipt of Binfield's money and application the land had been again leased before the execution of a formal contract, within the meaning of the last provision. This question we do not find it necessary to consider. The provision of section 14 quoted requires as essential to the validity of an assignment that it be entered of record in the office of the commissioner of public lands

and buildings. This requirement Mrs. Langan had not complied with. This being true, we think she has not shown any rights as against the state. It is doubtless true that this provision was inserted for the protection of the state, and, therefore, the numerous decisions with reference to assignments of pre-emption and other rights to the public lands of the United States are not applicable. The restrictions upon alienation of such rights are largely founded upon public policy and for the protection of the entryman. They are not merely for the protection of the government. Cases more nearly in point are those relating to the assignment of claims against the United States. An act of congress provides that all transfers and assignments of claims against the United States "shall be absolutely null and void unless the same shall be freely made and executed in the presence of at least two attesting witnesses after the allowance of such claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof." (10 Statutes at Large, p. 170, sec. 1.) The title of this act was "An act to prevent frauds upon the treasury of the United States." It is therefore apparent from the title that this provision was for the protection of the government and was not founded upon motives of public policy in any broader sense. It has been held that this statute applies to proceedings in the court of claims, although that court had not been established when the statute was passed; and that assignees of claims against the United States, unless they bring themselves within the exceptions of the act, have no standing to assert against the United States any right whatever. (*The Cote Case*, 3 Ct. Cl., 64; *Trist v. Child*, 21 Wall. [U. S.], 441; *United States v. Gillis*, 95 U. S., 407; *St. Paul & D. R. Co. v. United States*, 112 U. S., 733.) We are fully conscious of the distinction which might be suggested between money claims against a sovereign power enforceable only as that power may permit, and contracts with reference to the public domain. At the same time we believe that the principle which has

actuated the federal courts in enforcing the statute cited is applicable to the case before us. The restriction as to alienation in our statute is connected by grammatical construction with the provisions relating to forfeiture of leases. It was manifestly the intention of the legislature to require all assignments to be entered of record in the office of the commissioner in order that the state might with certainty transact its business with the lessees, and in order that it might protect itself against the claims of unknown assignees. Assignments of school-land leases are not prohibited, but in order to render them effective as against the state, the state must be informed of the assignments and the information must be conveyed by entering the assignments of record in the office of the commissioner. Otherwise the assignment is "not valid," —that is, it is void, or at least voidable at the option of the state. If we held that the assignee under an unrecorded assignment may in any manner enforce his claim against the state, then we should be holding that the assignment is valid, directly contrary to the language of the statute. Whether or not the lease to Binfield had been perfected, so far as to bar a right of redemption by the original lessee, the plaintiff not having entered her assignment of record, has shown no interest as against the state, and no right to redemption which the state or its officers was bound to recognize. The cases of *Hibbeler v. Gutheart*, 12 Neb., 526, and *State v. McPeak*, 31 Neb., 139, by implication, at least, recognize the rights of assignees even as against the state; but the contracts which were there in question were executed prior to the act of 1885 (Session Laws, p. 335, ch. 85), where the provision requiring the recording of assignments first appears. These cases are, therefore, in no manner applicable.

AFFIRMED.

HARRISON, J., not sitting.