Hile v. Troupe.

_____

LORENZO L. HILE, APPELLANT, V. M. N. TROUPE, COUNTY TREASURER, ET AL., APPELLEES.

FILED OCTOBER 4, 1906.  No. 14,525.

1. **School Lands: REDEMPTION.** A lessee of school lands or his assignee under a lease executed pursuant to the act of February 24, 1883 (laws 1883, ch. 74), who is delinquent of payments reserved in the instrument, is entitled to redeem from a forfeiture incurred by such delinquency at any time before such lands shall be actually resold or released.

2. ———: LEASE, RECORDING ASSIGNMENT OF. An assignment of a lease of school lands that was executed prior to the passage of the act of March 5, 1885 (laws 1885, ch. 85), is not affected by the provisions of that act requiring such assignments to be recorded in the office of the commissioner of public lands and buildings.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*H. M. Sinclair,* for appellant.

*Norris Brown, Attorney General,* and *William T. Thompson, contra.*

AMES, C.

In December, 1883, one Reed became a lessee of a cer-
tain tract of school land of this state pursuant to a stat-
ute then in force, and his lease became by purchase and
mesne assignment the property of the plaintiff herein in
November, 1889. At that time no default of the covenants
of the contract had been committed by the assignors of
the plaintiff, and he at once entered into, and has since
continued in, possession of the lands and has made last-
ing and valuable improvements thereon, claiming a right
thereto as owner of the interest created by the lease and
as assignee of the instrument. Continuously, also, from
that time until the year 1904, he paid the annual instal-
ments of rent reserved by the lease, which sums were
received and accounted for, without objection, by the
proper official authorities, as belonging to the public edu-
cational funds of the state. The plaintiff became delin-
quent of an instalment of rent stipulated by the contract
to be paid for the year 1904, and thereupon the lands
were, by authority of the board of educational lands and
funds, advertised for sale or lease, pursuant to the statute,
as having been forfeited. Notice of a declaration of such
forfeiture by the board having been served upon the plain-
tiff, he at once, and before the time specified in the adver-
tisement for offering the lands, tendered to the treasurer
of the county in which the lands lie the full amount of all
delinquencies, interest, penalties and costs that had ac-
crued under the lease, as a redemption from such for-
feiture. But the treasurer, acting under the advice and
instruction of the state board, refused the tender and de-
clined to accept the money offered, for the sole expressed
reason that the time for such redemption had expired.
The board thereupon proceeded to offer said lands at
public auction, and pursuant to that procedure executed
a lease of them to one Max Schlund, who by virtue of his
lease claims a right to the possession of them and of the
improvements situated thereon. This is an action upon a

petition setting forth the foregoing facts, and against the state board, the county treasurer and the lessee, Schlund, to obtain a judicial decree for redemption. A general demurrer to the petition was sustained, and the suit dismissed. The plaintiff appeals.

. The statute in force at the time the lease in suit was executed enacted a procedure for the declaration of forfeitures in cases of delinquencies in payments of rents, but with the following proviso: "Provided, the owner of any contract of sale or lease so forfeited may redeem the same by paying all delinquencies and costs *at any time before such land is again sold or leased.*" Laws 1883, ch. 74, sec. 20. This proviso remained in force until 1903, when it was amended by substituting for the portion thereof printed in italics the words "at any time before such land is advertised to be leased at public auction" (laws 1903, ch. 100, sec. 17), and the statute as theretofore existing was then repealed. But the matter with which the legislature was dealing was not the exercise of governmental functions merely, but one having reference to the rights and obligations of the state as a party to certain contracts, and it is a well-settled principle that a state is as powerless, under the operation of section 10, article I of the constitution of the United States, to impair by law its own contractual obligations as it is to affect in like manner the contracts of natural persons. *Davis v. Gray*, 83 U. S. 203; *Hall v. Wisconsin*, 103 U. S. 5; *People v. Stephens*, 71 N. Y. 527. And it is a principle much older than the constitution of the United States "that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This principle embaces alike those which affect its validity, construction, discharge, and enforcement." *Von Hoffman v. City of Quincy*, 71 U. S. 535, 550. This language is authoritative and binding, not only upon this court, but upon every branch and functionary of the state government. And it

is said by the same high authority: "Any deviation from its terms, by postponing or accelerating the period of performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with the performance of those which are, * * * impairs its obligations." *Green v. Biddle,* 8 Wheat. (U. S.), *1, *84. It is clear therefore that the right of redemption created by the above quoted proviso in the statute in force when the lease in suit was made became incorporated with and a part of that instrument. The proviso had nothing to do, as the attorney general contends that it did, with mere procedure or with the remedy by which the state was and is entitled to declare and enforce a forfeiture and a resale or release of the land; but it is entirely distinct therefrom and expressly designed to preserve to the lessee the valuable right to atone for his delinquencies and to redeem his land from forfeiture at any time during the pendency of such proceedings and before their termination by an actual resale or release. That such a right is a contractual one, which is valuable and vested and protected by the above mentioned constitutional guaranty, the authorities leave us no room to doubt. *Bronson v. Kinzie,* 1 How. (U. S.) *311; *Howard v. Bugbee,* 24 How. (U. S.) 461; *Cargill v. Power,* 1 Mich. 369; *Moody v. Hoskins,* 64 Miss. 468; *Dorrington v. Myers,* 11 Neb. 388; *Von Hoffman v. City of Quincy, supra.* The act of 1903 was therefore, in the respect mentioned, inoperative upon the lease in question.

The statute enacted in 1883, and in force at the time the lease in suit was executed, contained no regulation with reference to the record of assignments of such instruments, nor requirement that they should contain any stipulation or recital relative to that subject, but in 1885 the legislature passed a new and comprehensive act "to provide for the registry, sale, leasing and general management of all lands and funds set apart for educational purposes, and for the investment of funds arising from the sale of such lands" (laws 1885, ch. 85), and to repeal an

act having a similar title passed in 1883, the latter being the statute first above mentioned.  The new act provided a considerable amplification of the procedure established by that which it superseded, and contained several restrictions and regulations not found in the latter, and required, among other things, that leases issued pursuant to it should contain a stipulation or recital that "no assignment of such lease contract shall be valid unless the same be entered of record in the office of the commissioner of public lands and buildings."  Laws 1885, ch. 85, sec. 14. But the act contained no general provision relative to the record of assignments of leases not containing such stipulation or recital, nor any, except that already quoted, with respect to those containing it, so that the requirement did not by its terms apply to the record of assignments of any leases except such as should be thereafter executed pursuant to its authority.  If the legislature intended that the regulation with respect to the record of assignment should have prospective operation only, and should be applicable solely to leases thereafter to be executed and containing the required recital, it could have chosen no more apt language for the expression of that purpose.  It cannot be supposed to have been intended to have unrestricted retroactive operation, because the legislature was incompetent to invalidate previously executed assignments of then existing leases, and no practical object would have been accomplished by requiring such a record by persons holding or obtaining leases through mesne assignments, because a record of the immediate assignment, without a record of those intermediate, would not have disclosed a chain of title or have furnished the state board or the public with any useful information.  The plaintiff's title was acquired through two mesne assignments, both of which were executed before the passage of the act of 1885, and to neither of which can that act, by any possible construction, be said to have been applicable, and we think that it had no application to the immediate assignment to the plaintiff.

This conclusion relieves us from a necessity, which might otherwise have been imposed upon us, of deciding the questions of estoppel which were much discussed in the briefs and arguments of counsel on both sides. We may say in passing, however, that we much doubt that equity would permit a forfeiture for failure to record an assignment after there had been 13 years' occupancy under it in good faith, accompanied by the payment of that many years' rent charges, and the erecting of lasting and valuable improvements. It may be observed in this connection that it is not the lease that the statute avoids for failure to record an assignment, but merely the unrecorded assignment, and we doubt if the court would permit an extension of a forfeiture to the lease itself, or make a failure to record in a case like this, in which the assignee was known to be actually in possession and had made payment of instalments of rent which the state had accepted without objection, a cause for disturbing the plaintiff, except at the instance of some person having a better right. It is a matter of indifference to the state who has the bare legal title to the leasehold, or who furnishes the redemption money, so long as the latter is not a mere volunteer having no interest, which the plaintiff certainly is not. But, for reasons already stated, we do not find it necessary to express an opinion upon these questions, and therefore refrain from so doing. We are satisfied that upon the facts alleged in the petition and admitted by the demurrers the plaintiff is entitled to the relief prayed in his petition, and recommend that the judgment of the district court be reversed and the cause remanded for further proceedings.

EPPERSON, C., concurs.

OLDHAM, C., not sitting.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district

court be reversed and the cause remanded for further proceedings.

REVERSED.