RELF et al. v. THOMPSON et al.

No. 29756.    Oct. 29, 1940.

Rehearing Denied Dec. 3, 1940.

*107 P. 2d 536.*

Geo. A. Fitzsimmons, of Oklahoma City, for plaintiff in error.

Twyford & Smith and William J. Crowe, all of Oklahoma City, for defendants in error.

BAYLESS, C. J. Mattie Relf, the widow of Pearl Relf, deceased, and James Relf et al., his children, filed an action in the district court of Oklahoma county, against D. R. Thompson et al., to recover real estate; and from a judgment adverse to them they appeal.

November 16, 1910, the Commissioners of the Land Office of the State of Oklahoma sold the real estate involved to Pearl Relf on the deferred payment plan, and issued to him in 1911 the customary "certificate of purchase" evidencing his rights under the applicable laws.

February 17, 1927, Relf and wife executed and delivered to D. R. Thompson and B. H. Mears an "oil and gas grant," wherein it was recited, for a consideration of $1,000, "a full undivided one-half (½) part of all of the oil and gas in or under, or which may hereafter be found on or produced from" the real estate involved was conveyed.

June 29, 1929, Pearl Relf and wife conveyed the north half of the real estate involved to Maggie Relf.

On the same date Pearl Relf conveyed the south half of the real estate involved to his wife, Mattie, the plaintiff herein.

November 7, 1929, Pearl Relf and wife executed and delivered to Thompson and Mears an "Assignment" reading in part:

"Whereas, first parties have made a mineral deed to an undivided one-half interest to all oil and gas and other minerals produced on the premises to B. H. Mears and D. R. Thompson, and

"Whereas, first parties are in default of payments of money due to the state of Oklahoma under their certificate of purchase and their rights are about to be canceled by reason of nonpayment thereof.

"Now, therefore, in consideration of the premises, the first parties hereby assign and transfer to the said B. H. Mears and D. R. Thompson the right to make all delinquent payments to the state of Oklahoma, including any future payments to become due, and said first parties hereby grant to said second parties a lien upon said real estate to secure the monies which they may pay out in the future under this assignment.

"In the event such payments are made by the second parties and the first parties desire to redeem said land, they may do so at any time by paying the principal, plus 10% interest, before the issuance of patent to parties other than the first parties."

About this time, and for a year or so afterward, there were delinquencies in the installments due on the purchase price of the land under the certificate of purchase, and notice was served on Relf, Thompson, and Mears, as provided by statute, that unless payment was made the certificate of purchase would be canceled; but it appears nothing was done further under this notice. Also, the taxes became delinquent, and were sold to Oklahoma county in 1932, in the regular way.

In the early part of 1933, Pearl Relf died, and the record before us does not disclose any proceedings to administer upon his estate or to determine who were his heirs.

January 8, 1934, the tax sale certificate of 1932 was assigned by Oklahoma county to D. R. Thompson.

September 16, 1935, Thompson caused notice to be served on Mattie Relf, James Relf, and Mears that he was the holder of the tax sale certificate aforesaid and unless redemption thereof was made within 60 days he:

"* * * will demand of the Commissioners of the Land Office at the State Capitol in Oklahoma City, Oklahoma, that transfer of the certificate of pur-

chase upon said land heretofore issued in the name of Pearl Relf be transferred and assigned to him and that he as the holder of said tax certificate and taxes endorsed thereon be permitted to purchase said land and secure deed therefor from the said Commissioners of the Land Office as provided by law."

September 30, 1935, Maggie Relf and husband conveyed to D. R. Thompson the north half of the land involved.

December 11, 1935, a certificate of purchase was issued to Thompson, and on June 26, 1939, a patent to the land involved herein was issued.

August 26, 1939, this action was filed. The plaintiffs set out their relationship to Pearl Relf, deceased, and set out his original purchase of the land. They recite the execution of the oil and gas grant, and the subsequent assignment, which instruments they assert were and are mortgages securing the money Thompson and Mears might advance for Relf toward the purchase price of the land. They then allege generally many of the facts as outlined hereinabove whereby Thompson obtained the transfer to himself of the land covered by the certificate of purchase. This they allege to be illegal, fraudulent, and a breach of the fiduciary relationship existing between plaintiffs, as heirs of Relf, and Thompson. They ask to be permitted to repay Thompson the money he had expended, with interest, and to redeem the land, thereby canceling the interests of all other defendants, who claim through Thompson and Mears.

It is sufficient to say of the positions and contentions of the defendants: They take the position that Thompson legally succeeded to all of the interest that Relf acquired by the purchase in 1910, and plaintiffs are not entitled to any relief. There are other grounds of defense, but they are unnecessary to notice or discuss.

Before beginning a discussion of the issues presented by plaintiffs we think it well to notice the status of the plaintiffs as disclosed by the record. The conveyances in the nature of deeds whereby Pearl Relf divested himself of all title to the property several years before his death stand unchallenged by the plaintiffs herein, and unexplained in the sense of modification. We have searched the petition for an outright allegation that he was the owner of the certificate of purchase at the time of his death. Of course there is the inference from the position of the plaintiffs as his alleged heirs that he did own it. Mattie Relf testified that part was conveyed to Maggie Relf, and when asked concerning the 80 so conveyed, said: "* * * I ain't asked her nothing about hers." Obviously none of the plaintiffs have any interest in the north half as heirs of Pearl Relf, for he did not own any interest at his death to descend to his heirs. This 80 acres is out insofar as this action is concerned.

The deed to Mattie Relf was not explained away or qualified, and, insofar as the children of Pearl Relf are concerned, they inherited no part of the south half because their father did not own it at his death. The inference could be drawn from the joint efforts of the plaintiffs that Mattie Relf was recognizing some interest in the children, but nothing is said in their pleadings or briefs on this point, and we are treating the action as between Mattie Relf and defendants. If she prevails in this litigation and desires to treat herself as trustee for her coplaintiffs, it is no concern of ours or defendants. But looking at the record made by plaintiffs, we see nothing that justified us as treating the children of Pearl Relf as proper parties plaintiff herein. If he retained an equitable estate in this land after the conveyance to Thompson et al., he parted with it when he conveyed one tract to Maggie and one to Mattie, and his children inherited no interest therein from him. Maggie conveyed her tract to Thompson, and there can be only 80 acres involved and only Mattie interested therein under the record.

Under proposition 1 it is contended the trial judge erred in not finding that

the oil and gas grant, alone, or by virtue of and in conjunction with the assignment, was given as security for the repayment of money, and therefore was a mortgage.

The burden rested upon plaintiff to establish this contention by clear, cogent, and convincing proof, and this she did not do. She testified at length for herself, and nowhere did she say that the oil and gas grant was a defeasible conveyance. She produced a witness who testified that he heard a conversation between Thompson and Pearl Relf, before the conveyance was made, to the effect that Thompson would lend Relf $1,000 on the security of the minerals. The assignment quoted refers to the interest of Thompson et al. in the minerals, and upon this premise plaintiff asserts that this was a recognition of the defeasible character of the grant or changed the grant from a positive to a qualified conveyance.

We think the trial judge was justified in refusing to treat the testimony about the loan as evidence of the character requisite to qualify a conveyance absolute on its face.

We also think the trial judge was justified in refusing to treat the assignment as a recognition of the qualified nature of the grant or as being in itself a qualification thereof. Clearly the assignment was defeasible, and all parties agreed that all money advanced under it was repaid. We think that any reference in the assignment to the grant was simply a recognition that Thompson et al., as grantees therein, were interested in seeing that Relf paid out his contract to the state and thereby matured his title to the land and incidentally the title of Thompson et al. to the minerals.

The court admitted over the objections of plaintiff testimony of Thompson regarding the conversation between Thompson and Mattie Relf at the transaction between Thompson and Pearl and Mattie Relf at the execution and delivery of the oil and gas grant. Plaintiff asserts this testimony was inadmissible from Thompson under section 9674, O. S. 1931, 46 O.S.A. § 1. Because we are of the opinion that plaintiff failed to sustain the burden that was upon her in the case, no occasion arose for defendants to introduce evidence, and any error in the admission of testimony from an incompetent witness was not prejudicial.

The second proposition covers the contention that Thompson did not serve a legal notice that Pearl Relf's certificate of purchase would be canceled. In this argument the plaintiff cites the various statutes that have been passed and points out wherein the procedure followed by Thompson and adopted by the Commissioners of the Land Office in substituting Thompson for Relf as the purchaser was defective and insufficient to meet the requirements of the law. It is the contention of the plaintiff that this procedure composes a mixture of the various schemes of procedure for divesting a delinquent certificate holder and substituting another.

Thompson controverts this argument by asserting that he adopted and followed the rights and procedure set out and implied in section 5518, O. S. 1931, 64 O.S.A. § 185, as approved by this court in several cases. Briefly, that section provides:

"* * * The purchaser, at a tax sale of any such lands sold for delinquent taxes shall acquire, by virtue of such purchase * * * the right to be substituted in place of the holder and owner of such certificate of sale as the assignee thereof. * * *"

It will be observed that no form of procedure is specified in this section. As suggested by defendants, no notice is required and the fact that notice of any kind was given by Thompson is immaterial to the validity of the proceedings.

The third proposition is that, where one person assumes certain positions with respect to others in relation to property, he is prohibited from acquiring rights in the property adverse to

and to the exclusion of the other person. It is argued that Thompson was a tenant in common with the owner of the other mineral interest, and surface rights, Burt v. Steigleder, 132 Okla. 217, 270 P. 54, and the general rule that prevents cotenants from acquiring title to all of the property to the exclusion of his cotenant as stated in the Burt Case and other authorities applies here. Tiffany, Real Prop. (3d Ed.) vol. 2, p. 287, sec. 463. It is also argued that the rule announced in Brooks v. Garner, 20 Okla. 236, 94 P. 694, and Grison Oil Co. v. Lewis, 175 Okla. 597, 54 P. 2d 386, to the effect that one who has such an interest in property that it is to his advantage to have the ad valorem taxes paid cannot acquire a tax title to the property, but his act in purchasing at the tax sale or taking an assignment (as in this case) will be treated as a payment of the taxes.

No fault can be found with the rule announced in the Burt Case and Tiffany, supra, but there are numerous exceptions thereto and limitations thereon, and each case must be carefully considered in its own light. For the time we pass to the second point argued.

This court has held that the mineral interests in land may not be assessed separately where there is no production, as we understand the case to be here (In re I. T. I. O., 43 Okla. 307, 142 P. 997), and although there are mineral interests owned by others than the fee holder on nonproducing land, the ad valorem taxes must be assessed against the fee owner and should be paid by him. State v. Shamblin, 185 Okla. 126, 90 P. 2d 1053. This court also has held that the owner of mineral rights in nonproducing land has such an interest to see the taxes paid that he may pay delinquent ad valorem taxes, and will have an equitable lien therefor on the fee, and may foreclose the lien for the recovery of his money expended. Cochran v. Godard, 152 Okla. 507, 78 P. 2d 692.

Thus, under the authorities cited and discussed, it seems that Thompson, as a cotenant, could not oust his cotenant, and that he could not acquire adverse rights by the tax sale certificate, and had an equitable lien for the protection of the tax money expended.

To offset this argument Thompson cites and relies on Clark v. Board, 143 Okla. 18, 285 P. 127, and other decisions of this court, including Montague v. State, 184 Okla. 574, 89 P. 2d 283, to the effect that the only remedy of one who purchases at a tax sale of school lands is to have himself substituted for the holder of the certificate of sale issued by the Land Office.

We are impressed with this argument. The rules respecting cotenants purchasing as trustees and prohibiting one interested in the payment of taxes from acquiring adverse title thereby permit so many exceptions that any case that presents a reason for avoiding the application of the rules is not to be governed by them.

In Oklahoma the administration of the public lands entrusted to the Commissioners of the Land Office is governed entirely by statutes enacted for and relating only to that purpose. Many of the things therein provided for are of a summary nature and provide for acts and result in legal consequences contrary to many other well-established principles that must give way.

The Legislature has permitted the equitable estate that ultimately may ripen into a fee-simple title to be taxed on an ad valorem basis, as can be seen from the statutes and decisions cited. However, care was taken to prevent tax titles coming into existence as on land not administered by the commissioners, and the statute has prescribed the protection a purchaser at a tax sale has, and several times we have said it is his sole remedy. We think this means that the owner of a mineral interest may pay to prevent the cancellation of the commissioners' certificate of sale, and if he does so, he is permitted by statute to substitute himself for the holder of the commissioners' certificate of sale, and that is his only remedy.

It is unnecessary to discuss the other propositions raised, as they turn upon the court's findings from the evidence, and we think they are not against the clear weight of the evidence.

Judgment affirmed.

WELCH, V. C. J., and OSBORN, DAVISON, and NEFF, JJ., concur.