[Civ. No. 13743.   First Dist., Div. One.   Aug. 30, 1948.]

LE ROY J. THEIN, Appellant, v. SILVER INVESTMENT CO. (a Corporation) et al., Respondents.

Jos. A. Brown for Appellant.

Geo. A. Connolly and Jerome Politzer for Respondents.

PETERS, P. J.—Plaintiff, Le Roy J. Thein, brought this action against defendants, Silver Investment Co. and Cecil and Mary Artz for specific performance of an agreement to convey realty. The Artzes filed a disclaimer of any interest in the property. The Silver Investment Company opposed the request for specific performance and cross-complained to quiet its title to the property and to recover its rental value during its alleged unlawful detention by plaintiff. The trial court denied to plaintiff the remedy of specific performance, quieted cross-complainant's title to the property, and granted the cross-complainant $700 damages because of plaintiff's unlawful detention of the property for a period of 14 months. From this judgment plaintiff and cross-defendant Thein appeals.

Appellant advances several arguments, but basically it is his contention that several of the findings are not supported by substantial evidence. On this appeal this court, of course, must disregard all conflicts in the evidence and accept, as true, the evidence and the reasonable inferences therefrom most favorable to respondent.

It is admitted that on October 28, 1944, Mr. and Mrs. Artz entered into a contract with the Silver Investment Company whereby the company agreed to sell, and the Artzes agreed to

buy, a certain improved parcel of land in San Francisco for $5,500, $350 down, and the balance of $5,150 at the rate of $50 a month, payable on the first day of each month, unpaid installments to bear 6 per cent interest. The buyers agreed to pay all taxes and all insurance premiums. It was also provided that if the buyers should fail for a period of 30 days to pay any installment ''then the sellers shall be released from all obligations in law or equity to convey said property, and the buyers shall forfeit all rights, or interest thereto, and any and all payments theretofore made by the buyers under this agreement shall be forfeited to the sellers, as rent and liquidated damages for the nonfulfillment of the terms of this agreement.'' Upon default, the sellers were given the right of reentry and the right to repossess the property. It was further provided that ''no assignment of this contract shall be valid without the written consent of the sellers,'' and that ''Time is the essence of this agreement.'' It is admitted that the Artzes made all payments required under this contract up to and including the payment due on March 1, 1946, which was paid on March 15, 1946. It is further admitted that no further payments were made by the Artzes, and in particular that they did not make the payments falling due April 1st and May 1, 1946.

It further appears that on March 13, 1946, the Artzes entered into a contract to sell the property in question to appellant for $6,125, $200 down and the balance within 60 days to be paid to a designated title company. It was provided that time was the essence of this agreement. Admittedly, Thein paid the Artzes the $200 called for by the agreement upon its execution, and on April 22d, paid them an additional $900, and later an additional $100. In spite of appellant's contention to the contrary, the evidence shows that respondent, during all times here pertinent, had no knowledge of the preliminary negotiations for this contract or of its execution, and that it had no knowledge of the payments made by appellant to the Artzes when they were made or prior thereto.

On April 10, 1946, Mr. Artz informed Jacob Krier, secretary of respondent, that he was trying to sell the property and had a prospective purchaser, but that he was not yet ready to call for the deed to the property. On April 17, 1946, Mr. Artz brought appellant to respondent's office and talked with Krier. Just what happened at that meeting is in dispute. Krier testified that Artz introduced appellant as the party who was to purchase the property from the Artzes; that Artz

asked if respondent company would consent to an assignment of the contract to appellant; that he told Artz that respondent would not consent to an assignment; that respondent was dealing with Artz and Artz alone; that if Artz wanted a deed to the property from respondent he would have to pay cash for it; that respondent would deliver a deed any time that Artz produced the cash; that Artz and Thein then held a consultation and then Artz told him to mail the deed to the title company and the money would be there; that no mention was made of Thein's prior payment, or of his intention to make future payments to the Artzes; that the witness was simply told that the money would be "at the title company as soon as the deed is there"; that neither Thein nor Artz knew the escrow number of their particular transaction, and it was agreed that Thein would procure such escrow number and inform Krier so that the latter could deposit the deed with the title company; that Thein did not leave his telephone number with respondent, nor did he leave his residence address. When Thein was introduced to Krier the latter understood Artz to say that appellant was "Mr. Time" of the "Time Realty Company," a firm known to Krier. All of the pertinent portions of Krier's testimony were corroborated by the accountant for respondent and by Artz.

Krier further testified that several days after this meeting of April 17th, Thein telephoned to Krier and gave him the escrow number. Under date of April 22d, Krier mailed to the title company a deed from respondent to the Artzes with instructions to deliver the deed to the Artzes upon receipt for the account of respondent of $4,918.25, the balance then due respondent. Artz testified that during the evening of April 23, 1946, he finally reached Thein by telephone, having been unsuccessful in reaching him during the day, and informed him that the deed had been deposited with the title company. Thein denied having been so informed, claiming that he first learned of the deposit of the deed on May 16th, but this denial did no more than create a conflict in the evidence, which conflict has been determined by the trial court.

Krier testified that on May 8th, he telephoned the title company and asked why his company had not received the money for the deed. He was told that no money had been deposited to take up the deed. Krier then attempted to reach Artz by telephone and was unsuccessful, and then went out to the house in an attempt to reach him, but no one was there. He then telephoned the "Time Realty Company" in

an attempt to reach Thein, whom Krier then erroneously believed was "Mr. Time." That company, of course, informed Krier it had no knowledge of the transaction. Krier had no other means of locating Thein. On May 9th, he wrote to the title company requesting a return of the deed. On May 13th, the title company mailed the deed back to respondent, and it was received by respondent on May 14th. On May 15th, Krier visited the property and found it vacant.

By this time respondent was apparently suspicious of the deal. The Artzes were then delinquent on the April 1st and May 1st payments. Krier had been unable to locate either Artz or Thein. He now found that the Artzes had moved out of the property. On May 16th, Krier, together with Johnsson, another officer of respondent, again visited the property, and, finding it vacant, with all the furniture removed, decided to take possession on behalf of their company, and began to change the locks. While so engaged, Thein and his son arrived. An argument ensued in which Thein claimed to be the owner of the premises. The evidence shows that Thein was belligerent, threatening and abusive. Johnsson finally suggested that they all return to respondent's office to talk the problem over. They did so, and Thein discussed the problem with Johnsson. Johnsson testified, and his testimony was corroborated by the accountant of respondent, that he talked with Thein and that Thein's son was not present during the major part of the conversation; that he told Thein that respondent recognized the Artzes, and the Artzes alone, as the parties with whom the respondent was dealing; that the deed had been deposited but that no money had been forthcoming; that the Artzes were two months delinquent in their payments and had violated their contract. He further testified that Thein then tendered $100 in cash in payment of the two delinquent payments, which money he secured from his son whom he called into the office; that Johnsson refused the tender telling Thein "I am looking to Mr. Artz, I have nothing to do with you."

Appellant contradicted this testimony. He testified that after returning to respondent's office he had a conversation with Johnsson, and that his son was present; that during the conversation he made a cash tender for the remainder of the purchase price due from the Artzes; that the balance was then in the neighborhood of $4,918, and that he tendered that amount or more to Johnsson; that he had that amount in his wallet and threw the money on the desk; that Johnsson

refused the tender, stating that before he could accept it he would have to talk it over with others in the company, but that he would recommend that the deed be placed back in escrow. Thein also testified that it was on this day—May 16th —that he first learned the deed had been placed in escrow on April 22d, although Artz testified he had personally notified Thein of this fact on April 23d. The testimony of Thein was corroborated by his son.

Johnsson unequivocally denied that Thein ever tendered more than $100, and denied that Thein offered to pay the balance due on the Artz contract. In this he was corroborated by the accountant of respondent who overheard the entire conversation.

After this conversation the Theins left. On May 17th, Krier again visited the premises and discovered that all the locks had been changed and that he could not get into the house. Appellant admits that he caused the locks to be changed. On May 18th, Krier posted a "no trespassing" sign on the door of the premises, and shortly thereafter Thein arrived and tore it off. On May 20, 1946, appellant filed this complaint for specific performance.

Appellant testified that on May 22, 1946, two days after the complaint was filed, he drew a check for $5,050 naming the title company as payee and sent the check to the title company. Admittedly, no instructions accompanied the check, and no escrow number was given to the title company. The check is dated May 22d, but the representative of the title company had no record or recollection of when his company received it. Thein testified that the check was sent to make a good tender and that he was "still ready to pay that money, and have been at all times." Pending trial cash was substituted for the check. It is admitted that at no time during May, 1946, did appellant have on deposit with the bank upon which the check was drawn an amount sufficient to meet the $5,050 check, his maximum balance for that month being $2,578.76, and his average balance being $1,300. The manager of the bank testified, however, that on May 23, 1946, Thein had made arrangements with the bank to have the bank honor the overdraft, and that if the check had been presented it would have been paid.

Appellant remained in possession of the property from May 18, 1946, to the date of judgment, July 25, 1947, a period of a little over 14 months. Admittedly, the reasonable rental value of the premises was $50 per month. Under date of

September 30, 1946, the Artzes purported to assign to Thein all their interest in their contract of October 28, 1944, with respondent. The Artzes, however, as already pointed out, have filed a formal disclaimer in this action.

On these facts, the court, after finding the execution of the October 28, 1944, contract of sale between the Artzes and the respondent, with the 30-day forfeiture clause for default of the buyers, plus the time is of the essence clause, and the provisions against assignment without written consent of the seller, found that the Artzes had been in default thereunder since April 1, 1946; found the execution of the March 13, 1946, agreement of sale between Thein and the Artzes; found that such contract was entered into by the parties "without the knowledge or consent, written or oral, express or implied," of respondent, and that Thein failed to pay or tender the balance of the purchase price, as provided in that contract, within 60 days from the execution thereof; that Thein acquired no interest in the property by reason of his contract with the Artzes, and acquired no rights under the October 28, 1944, agreement between the respondent and the Artzes by reason of any alleged assignment of rights thereunder; that the Artzes had no right to make any such assignment without written consent of the respondent, which was not procured; that Thein does not have any right, title or interest in such property; that it was not true that Thein paid any part of the $1,200 to the Artzes in reliance on the promise of respondent to convey the property in accordance with the terms of the October 28, 1944, agreement between respondent and the Artzes; that respondent made no promise or agreement to convey the property to Thein; that respondent refused to consent to any assignment of rights to Thein, and refused to have any dealings with Thein; that on May 16, 1946, and after the default of the Artzes on April 1st, and their vacating of the house, respondent lawfully reentered and took possession; that thereupon all rights of the Artzes terminated; that on May 18, 1946, Thein unlawfully took possession of the property, and continues in such unlawful possession; that the reasonable value of Thein's unlawful occupancy was $50 per month, and that respondent was entitled to such sum for each month during which Thein unlawfully withheld possession from it, up to the time of judgment.

The judgment thereafter entered decreed that neither Thein nor the Artzes had any interest in the property; that respondent was the owner thereof and entitled to possession;

that the contract of October 28, 1944, be cancelled; and that Thein pay to respondent the sum of $700 for the reasonable rental value during the period of unlawful withholding of possession; that the title of respondent to the property should be quieted.

As already pointed out, appellant attacks several of these findings as being unsupported, but, strangely enough, does not attack the finding that, upon the default and abandonment of the premises by the Artzes, and the reentry by respondent, all interest of the Artzes ceased, and respondent became the legal and equitable owner of the premises. That is the focal finding in the case. If respondent became the legal and equitable owner of the premises on May 16, 1946, and if on that date all interest of the Artzes was terminated, it is quite obvious that any later tender of payment by appellant, even assuming such tender was otherwise proper and valid, would be of no legal significance. On the date of the only tender ever made, apparently May 22, 1946, if respondent was under no obligation to give a deed to the Artzes had they then made a proper tender on that date, it is too clear to require further discussion that a tender by the appellant on behalf of himself or the Artzes would avail appellant nothing. If appellant ever had any legal rights enforceable against respondent, those rights were derivative rights gained from the Artzes. Whatever rights appellant may have had against respondent were subject to all equities and defenses that respondent could have urged against the Artzes. Upon the termination of the Artzes' rights, appellant's rights against respondent likewise terminated.

Appellant does contend that the finding that the contract between the Artzes and Thein was made without the knowledge or consent of respondent is unsupported, and contends the evidence compels a contrary finding. That contract was executed on March 13, 1946. There is not one word of testimony that respondent knew of the execution of the contract on that date. Respondent did not know the Artzes were contemplating selling the property until April 10th, and had no knowledge of the existence of Thein until April 17th. On that date all respondent knew was that the Artzes were contemplating selling to appellant. On that date Krier refused any assignment arrangement, but agreed to deed the property to the Artzes upon payment of the balance then due. Krier lived up to that agreement and deposited the deed to the property made out to the Artzes on April 22d, and Thein was

so informed on April 23d. Thein made no attempt to live up to his bargain with the Artzes until May 22d. It is obvious that the challenged finding is amply supported.

Appellant also attacks the finding that he failed to pay or to tender the balance of the purchase price. Under the terms of his contract with the Artzes, executed on March 13, 1946, appellant was required to pay the balance of the purchase price within 60 days thereafter—i. e., May 12, 1946, —and time was made of the essence. The only tender ever made was made on May 22, 1946. That tender was not made as required by the Artz-Thein agreement. When that tender was made the Artzes were two months delinquent on their payments to respondent, under a contract containing a 30-day forfeiture clause. Obviously, the tender, even if otherwise a valid tender, was made too late. Even if respondent was required to tender a deed to appellant to place him in default, such tender was made on April 22d and appellant knew it on April 23d.

Appellant also urges that the trial court erred in its finding that he acquired no interest in the property by virtue of his deed from the Artzes. The exact finding challenged is No. 6 (C.T. 44), and is to the effect that appellant acquired no interest by virtue of the conveyance by the Artzes of their interest ''as alleged in paragraph IX of [the] ... first amended and supplemental complaint.'' That paragraph merely alleges that, since the filing of the complaint, the Artzes have assigned their interests to appellant. The conveyance thus referred to is dated September 30, 1946, a date long after the Artzes had ceased to have any interest in the property. Appellant, however, treats the finding as if it referred to his agreement with the Artzes of March 13, 1946, and cites several cases relating to the force which must be given to nonassignability clauses in contracts. This is an improper interpretation of the finding, and all arguments based on this improper interpretation, are unsound.

The next contention of appellant is that respondent ''is estopped by the declarations and conduct of its officers and agents to question the validity of the assignment and deed [of September 30, 1946?], and finding number 7 to the effect that no act, omission, promise, agreement or representation induced plaintiff to pay $1200 to Mary and Cecil Artz is against the evidence and against law.'' (App. Op. Br. p. 71.) After arguing that he has thus made an outlay of $1,200 and has thus suffered prejudice, appellant argues ''It was clearly

the duty of the officers of the defendant corporation, when they were informed that plaintiff was purchasing the property, to object then and there to the assignment. Having stood idly by, they cannot now raise the question, because 'where one is silent when he should speak, the law will compel him to be silent when he would speak.' '' (App. Op. Br. p. 73.) Appellant then cites a number of authorities on the subject of estoppel. (Code Civ. Proc., § 1962(3); *Vierra* v. *Pereira,* 12 Cal.2d 629 [86 P.2d 816]; *Notten* v. *Mensing,* 3 Cal.2d 469 [45 P.2d 198].)

There is not one word of evidence that Krier, or any other officer of respondent, prior to May 16th, was ever informed or knew that Thein had paid, or was intending to pay, the Artzes any portion of the purchase price. Thein paid the original $200 and the subsequent payments totalling $1,000 without informing respondent of his intention. The entire $1,200 was paid to the Artzes weeks before the respondent knew of such payments. The evidence conclusively establishes that Krier and the other officers of respondent, from the very first meeting with Thein on April 17, 1946, until the meeting of May 16, 1946, told him, in ·no uncertain language, that respondent would not consent to an assignment, and that the company was willing to recognize the Artzes and the Artzes alone as their contracting party.

The evidence demonstrates that Krier had no intent, and that appellant had no reason to believe that Krier had the intent, to create any independent rights in appellant when he consented to deposit the deed with the title company for delivery to the Artzes upon the payment of the balance of the purchase price. There is nothing in the record to indicate that Krier knew or should have suspected that appellant intended to do any more than supply the Artzes with the balance of the purchase price, or that appellant intended to pay the Artzes one cent prior to taking up the deed from respondent. The requisite elements of an estoppel just do not exist. (See cases collected and commented upon 10 Cal.Jur. § 13, p. 625; 5 Cal.Jur. 10-Yr. Supp. [1944 Rev.] §§ 13, 14, p. 586.)

■ The contentions that equity abhors forfeitures and will grant relief, where possible, from a forfeiture, need not be considered at length. Equity does not aid one who is the sole cause of his own misfortune. Any forfeiture that here resulted was caused by appellant's own acts. Respondent lived up to. its agreement to deposit the deed. Appellant knew

that the deed had been deposited. He could not expect respondent to wait for its money. He had promised to deposit the money immediately. He knew that the Artzes were delinquent in their payments to respondent. He knew the terms of that agreement. In addition, he knew that under his contract with the Artzes he was to produce the balance of the purchase price by May 12th. He made no attempt to live up to these obligations until May 22, 1946, after the interest of the Artzes and whatever interest he had, had been forfeited. Under such circumstances, no principle of equity suggests, far less compels, the granting of relief to appellant. He has brought his misfortunes upon his own head.

We conclude that the finding (not attacked by appellant) that all interest of the Artzes in the property terminated May 16, 1946, is supported and sound in law. We further conclude that every finding challenged by appellant is supported by substantial evidence. We further conclude that the trial court correctly found that there was no sound basis upon which to apply an estoppel or other form of equitable relief.

The judgment appealed from is affirmed.

Ward, J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 28, 1948.