EQUITABLE ROYALTY CORPORATION, a corporation, George C. Longstreth and Harry E. Lillibridge, Plaintiffs in Error,

v.

STATE of Oklahoma on relation of the COMMISSIONERS OF the LAND OF-FICE of said State, Defendant in Error.

No. 38379.

Supreme Court of Oklahoma.

Feb. 2, 1960.

Rehearing Denied May 17, 1960.

Priest & Belisle, Oklahoma City, for plaintiffs in error.

R. H. Dunn, N. A. Gibson, Francis Stewart, Oklahoma City, for defendant in error.

PER CURIAM.

In this action, defendant in error, the State of Oklahoma ex rel. The Commissioners of the Land Office of said State, hereafter referred to as "Commissioners", seeks to establish the State's asserted fee simple title to the NE/4, Sec. 36, T. 23N, R. 19W, Woodward County, free and clear of the hereinafter referred-to adverse claims of plaintiff in error. When referred to collectively herein, plaintiffs in error will be referred to as "defendants".

The case was submitted to the trial court upon a stipulation of facts and a supplement thereto. The pertinent facts developed by said stipulations are that title to the above described quarter of land "became vested in the State of Oklahoma pursuant to an Act of Congress approved June 16, 1906, and known as the Enabling Act, and such lands were granted for the use and benefit of the common schools of the State of Oklahoma"; that on March 7, 1913, pursuant to sale at which Jesse A. Wycoff was the highest bidder, Wycoff received a certificate of pur-

chase from State; that on February 2, 1929, Wycoff, joined by his wife, conveyed one half the minerals underlying the quarter to J. C. Miller; that on April 5, 1929, Miller conveyed ⅜ths of said minerals to the Equitable Royalty Corp.; that on May 27, 1929, Miller conveyed ⅟₃₂nds of the minerals to George C. Longstreth; that on April 21, 1952 Equitable Royalty Corporation conveyed ⁵⁰⁄₁₆₀ths of the minerals to Harry E. Lillibridge; that all of the mineral conveyances were recorded in the office of the County Clerk of Woodward County; that Wycoff did not pay the installments provided for in the certificate of purchase for two years; that State gave Wycoff notice by registered mail of intention to cancel and forfeit the certificate of purchase; that pursuant to said notice, the certificate of purchase was cancelled August 16, 1932; that none of the mineral conveyances were filed in the office of the Commissioners nor was notice of the execution of said conveyances given to said Commissioners; that under the administrative interpretation by "the Commissioners of the Land Office of Sections 1 and 2, Chapter 57 of the 1923–24 Session Laws, notice of proposed cancellation of certification of purchase in all cases was made to the purchasers, holders or owners of the certificate of purchase, and to the lienholder whose lien was of record in the office of the Commissioners of the Land Office, and to the person or persons in possession, and to no other person or persons, including holders of mineral interests."

The trial court entered judgment in favor of Commissioners. Defendants filed a motion for new trial and from order denying said motion, perfected this appeal.

The sole contention for reversal made by defendants is that under the applicable statutes of this State they could not be divested of their mineral interests without notice to each of them, and if said statutes are otherwise construed, same violate the due process and equal-protection provisions of Art. XIV of the Federal Constitution and Art. II, Sec. 7 of the Okla.Const.

We will first consider defendants' contention based upon the applicable statutes.

Defendants rely primarily on Ch. 57, Secs. 1 and 2, S.L.1923–24, hereafter referred to as "Sections 1 and 2" which treat with the forfeiture of certificates of purchase upon failure to comply with the terms thereof or applicable statutes.

In Sec. 1 it is provided in part that notice of default shall be given "all delinquent purchasers, or holders or owners of certificates of purchase." Service of the notice is provided for in Sec. 2. This section reads as follows:

"Section 2. *The service of the notice provided for in the foregoing section shall be made by registered mail, to the record owner, or lien holder of record and to the person or persons in possession thereof.* In event the postoffice or the address of the purchaser or transferee of said land be unknown, the notice shall be published in two consecutive issues of some weekly newspaper published in or of general circulation in the county where the land is situated. The forfeiture shall be entered by the Commissioners of the Land Office after ninety (90) days from the date of the first publication of said notice, or service of registered notice. Provided, that any purchaser or transferee may within thirty (30) days from the date of said order of forfeiture, appeal from said order to the district court of the county wherein said lands are located by serving legal notice of appeal upon the Secretary of the Commissioners of the land office, and executing a good and sufficient bond to the State of Oklahoma in the amount due the Land Office and the rents and profits thereof. Said bond to be approved by the Secretary of the Commissioners of the Land Office, and conditioned as provided by law, but in no event will the State of Oklahoma be liable for the costs of said appeal." (Emphasis supplied.)

Defendants contend that in view of the fact they filed their mineral deeds of record in the office of the County Clerk prior to the State giving notice of forfeiture, they were "record owner(s)" within the purview of Sec. 2 and for said reason notice to them was necessary before they could be divested of their mineral interests. Magnolia Petroleum Co. v. Carter Oil Co., 10 Cir., 218 F.2d 1; Magnolia Petroleum Co. v. State, ex rel. Commissioners of the Land Office, Okl., 322 P.2d 188, and other cases are cited as supporting said contention.

Commissioners rely primarily upon 64 O.S.1951 § 191 which reads in part as follows:

"Any purchaser of lands under the provisions of this act shall have the right to transfer or assign all his rights, title and interest in and to such lands, and such assignment shall be in form and executed and acknowledged as required under the laws governing conveyances; provided, *before delivery of patent, such assignment, to be valid, shall be duly recorded in a proper book, kept for that purpose by the Commissioners of the Land Office;* * * *" (Emphasis supplied.)

Commissioners contend that the quoted statute makes clear that only those who cause conveyances from certificate of purchase-holders to be recorded with the Commissioners are "record owner(s)" within the purview of Sec. 2, and for said reason notice to defendants who did not so record their mineral conveyances was unnecessary in order to divest them of their mineral interests upon the certificate of purchase being properly cancelled.

The parties agree that the precise issue presented by this appeal has never been directly considered by a court.

■ The cases heretofore cited clearly establish that conveyances of mineral interests in public lands by certificate holders can be made without the approval of the Commissioners; and that where such conveyances are filed of record in the office of the county clerk and in the office of said Commissioners, forfeiture of the certificate of purchase is ineffective as to owners of mineral interests who are not served with notice. The fact that the mineral convey-

ances involved in said cases were filed with the Commissioners is asserted by Commissioners as distinguishing said cases from the instant case. In the last cited case (322 P.2d 188, 191), it is pointed out that this Court did not "determine what owners were designated in the statute as 'record' owners; whether it referred to those owners whose conveyances were on record in the office of the County Clerk of the county where the land was situate; or whether it referred to such owners who had recorded their conveyances with the Commissioners of the Land Office as designated in 64 O.S.1941, § 191." Defendants contend that the reasoning of said cases and cases therein cited sustains their contention in the instant case.

■ A considerable portion of the briefs of the parties is given over to a discussion of the nature of defendants' interest in the minerals. Defendants assert that their interest represented a "vested interest" and Commissioners contend that their interest was contingent. In Stevens v. Patten, 174 Okl. 582, 50 P.2d 1106, the nature and character of a certificate holder's interest were stated in the first paragraph of the syllabus to be this:

"1. A sale of state school land by the commissioners of the land office on deferred payments, evidenced by note and certificate of sale, conveys the equitable title thereto to the purchaser and leaves the legal title in the state. The purchaser is entitled to the possession, rents, and profits, and against all the world, except the state, he is to be treated as the owner."

In view of the fact that Wycoff's title was an "equitable title" and "legal title" remained in the State until such time as the provisions of the certificate of purchase and applicable statutes were complied with, defendants obtained from Wycoff no more than an equitable title to the minerals. A decision herein, however, does not, in our opinion, turn on a precise definition of defendants' equitable and contingent interest in the minerals. To the contrary, a decision turns upon whether, under the applicable statutes, defendants could only be divested of their interests in the minerals after notice to them, and whether lack of notice under the facts contravenes the Federal or State Constitutions.

■ In Relf v. Thompson, 188 Okl. 209, 107 P.2d 536, 540, we pointed out that "the administration of the public lands entrusted to the Commissioners of the Land Office is governed entirely by statute enacted for and relating only to that purpose. Many of the things therein provided for are of a summary nature and provide for acts and result in legal consequences contrary to many other well-established principles that must give way." In our opinion it was clearly within the province and power of the Legislature to make the filing of instruments, evidencing the interest of those to whom a certificate holder sold or assigned in the office of the Commissioners a condition precedent to asserting adverse rights against the State, to lands covered by the assignment or grant, and for reasons hereinafter given we are of the further opinion such is the object and purpose of Sec. 191, supra. In brief, it was within the province and power of the Legislature to say that the provisions of said statute, as to the Commissioners and not those of the general recording statutes, should govern in cases such as the instant case. If Sec. 191 is a special recording statute that governs in instances such as are presented by this appeal, and we believe that such is the case, compliance with Sec. 191 is mandatory. The second paragraph of the syllabus in Norton-Johnson Buick Co. v. Lindley, 173 Okl. 93, 46 P.2d 525, reads as follows:

"2. A statute which is enacted for the primary purpose of dealing with particular subjects, and which prescribes by specific designation the terms and conditions of that particular subject-matter, supersedes a general statute which does not specifically refer to the particular subject-matter, but does contain language broad enough to cover the subject-matter if the specific statute were not in existence. The cases of Greer v. Bird, 93 Okl. 246, 220

P. 579, and De Groff v. Carhart, 97 Okl. 145, 223 P. 180, followed."

We again allude to Sec. 191, supra, wherein it is stated that an "assignment (from a certificate holder) to be valid, shall be duly recorded in a proper book, kept for that purpose by the Commissioners." Is this language meaningless? We believe not. It is settled law that in construing a statute it is presumed that every provision was intended to have some useful purpose and that all provisions should be given effect. Oklahoma Natural Gas Co. v. State ex rel. Vassar, 187 Okl. 164, 166, 101 P.2d 793, 796. And it is also settled law that in construing a statute the purpose intended to be accomplished thereby may be considered. Sheridan Oil Co. v. Superior Court of Creek County, 183 Okl. 372, 374, 82 P.2d 832, 834. To our way of thinking, the purpose sought to be accomplished by Sec. 191 was to place the Commissioners in the position where they could judiciously determine from their records persons who are entitled to a patent and those upon whom service of notice should be had in proceeding to forfeit certificates of purchase without incurring the expense of preparing an abstract or sending an agent to the county clerk's office to check the records. Considering the number of acres of so-called school land under the jurisdiction of the Commissioners and the area of Oklahoma, the money saved through making the records of the Commissioners conclusive on said matters is more than nominal. We are of the opinion that the "record owner" referred to in Sec. 2 as to the Commissioners is the person who appears as such from its records and not the records of the county clerk. The fact that as reflected by Berryman v. Producers Corp. of Nevada, 206 Okl. 24, 240 P.2d 1111, the general recording statutes are applicable to others than the Commissioners who obtain an interest based upon a certificate of purchase, is without significance. As pointed out, the purpose of Sec. 191 in so far as the issue before us in this case is concerned, was to economically expedite the functions of the Commissioners in issuing and forfeiting certificates of purchase, and the fact that the statute does not apply where the rights of the State are not directly involved is not decisive of the issue under consideration.

In referring to statutes of the same general purport as those before us, the Supreme Court of Nebraska, in State ex rel. Johnson v. Commercial State Bank, 142 Neb. 752, 7 N.W.2d 654, 655, said "the foregoing statutes were enacted for the protection of the state by insuring that the state might transact with certainty its business with the lessees of school-lands and protect itself against the claims of unknown assignees. Assignments of school-land leases are permitted, but in order to be effective against the state, the state must be informed of them in the manner which the statute prescribes. Langan v. Binfield, 49 Neb. 857, 69 N.W. 123; Hile v. Troupe, 77 Neb. 199, 109 N.W. 218."

In Langan v. Binfield, cited in the above quotation, the Court said "Assignments of school-land leases are not prohibited, but, in order to render them effective as against the state, the state must be informed of the assignments, and the information must be conveyed by entering the assignments of record in the office of the Commissioners; otherwise the assignment is 'not valid',— that is, it is void, or at least voidable, at the option of the state." [49 Neb. 857, 69 N.W. 124]

Defendants point out that in 1943 Secs. 1 and 2, supra, were amended, which amendment presently appears as 64 O.S. 1951 § 216.1 to 216.7, inclusive; that by said amendments the phrase "record owner" was deleted and language to the effect that "The lawful owner of a certificate of purchase contract, his heirs, executors, administrators, devisees, trustees and assigns, shall be served with notice" was used, and urge that this amendment shows that the Legislature intended prior to said amendment that all owners of interests in land covered by the certificate of purchase where the interests appeared from the records of the county clerk should be served with notice in a proceeding to forfeit the

certificate of purchase. In view of the wording of Secs. 1 and 2 and Sec. 191 which we have emphasized, the apparent purpose of said sections, the administrative construction that was placed on said sections and the fact that the amendment was not made until 11 years after the forfeiture proceedings in controversy were conducted, the amendment has little bearing on the issue under consideration. Moreover, the above quoted language of the amendment could be used as a basis for contending that an amendment which materially changes the language of a statute indicates that the Legislature intended to effect a change in the law. See 50 Am.Jur. "Statutes", Sec. 275, p. 261; Darby v. Oklahoma Tax Commission, 201 Okl. 159, 202 P.2d 978 and cited cases.

We turn to defendants' contention which is based on the Federal and State Constitutions. In view of the fact that we are convinced that as to the Commissioners Sec. 191, supra, is a special recording statute and that the matter of whom were "record owner(s)" as to the Commissioners in 1932 must be determined by said section, defendants are in fact contending that legislation which would require persons to record their interests in land covered by a certificate of purchase with the Commissioners instead of with the county clerk in order to give notice to the Commissioners of their interests is unconstitutional. We are unable to agree. In 16A C.J.S. Constitutional Law, § 643, p. 911, it is stated that "The state may require that owners shall comply with recording acts in order to retain their rights against others, such acts not amounting to taking without due process." Vance v. Vance, 108 U.S. 514, 2 S.Ct. 854, 27 L.Ed. 808, is cited in the foot notes as sustaining the text.

In Dale v. McClung, 159 Okl. 95, 14 P.2d 383, we held that the exercise by Commissioners of the Land Office of powers conferred by statute respecting school lands is not a denial of due process.

The certificate of purchase issued to Wycoff reads in part as follows:

"Seventh: That said purchaser shall have the right to transfer or assign all his right, title and interest in and to said land and improvements, but no transfer or assignment thereof shall be valid or of any force or effect unless made in conformity with the Rules and Regulations of the Commissioners of the Land Office of said State and recorded in the office of said Commissioners in the Capital of said State."

\* \* \* \* \* \*

"Eleventh: That a violation of any of the conditions and provisions of this Certificate of Purchase or the Laws of Oklahoma under which said land was sold or any Rules and Regulations of the Commissioners of the Land Office by said purchaser, shall work a forfeiture of said land and improvements and the same shall escheat to the State upon proof thereof and this Certificate and all contracts be cancelled and held for naught."

\* \* \* \* \* \*

"Thirteenth: This Certificate is issued and accepted by said purchaser subject to all of the conditions of Article 2 of Chapter Twenty-Eight of the Laws of the State of Oklahoma for the year 1909, and Chapter 168A, Session Laws 1911."

The defendants are charged with knowledge of the relevant provisions of the applicable statutes and are also charged with notice of the provisions of the Certificate of Purchase. The third paragraph of the syllabus to Nix v. Brogan, 118 Okl. 62, 251 P. 753, reads as follows:

"The general rule is that the law will impute notice and knowledge to a party of the conditions of instruments under which he holds or claims title."

See also 66 C.J.S. Notice § 13d, p. 651. The defendants are therefore charged with notice of the above quoted seventh paragraph of the Certificate to the effect that assignments from the certificate-holder were without "force or effect unless \* \* \* recorded in the office of said Commissioners."

In Scott v. Paisley, 271 U.S. 632, 46 S.Ct. 591, 592, 70 L.Ed. 1123, a grantee of one who had mortgaged the granted premises prior to the grant, contended that a judgment in a proceeding to foreclose the mortgage in which she received no notice was not binding upon her. She rested her contention on the due process clause of the Federal Constitution. In rejecting said contention the Supreme Court of the United States said:

"Plainly the right of one who purchases property subject to a security deed, with a statutory power of sale which must be read into the deed, is no greater than that of one who purchases property subject to a mortgage or trust deed, with a contractual power of sale. The validity of such a contractual power of sale is unquestionable. In Bell Silver & Copper Mining Co. v. Butte Bank, 156 U.S. 470, 477, 15 S.Ct. 440, 443, (39 L.Ed. 497) this court said: 'There is nothing in the law of mortgages, nor in the law that covers what are sometimes designated as trust deeds in the nature of mortgages, which prevents the conferring by the grantor or mortgagor in such instrument of the power to sell the premises described therein upon default in payment of the debt secured by it, and if the sale is conducted in accordance with the terms of the power, the title to the premises granted by way of security passes to the purchaser upon its consummation by conveyance.' In the absence of a specific provision to that effect, the holder of a mortgage or trust deed with power of sale, is not required to give notice of the exercise of the power to a subsequent purchaser or incumbrancer; and the validity of the sale is not affected by the fact that such notice is not given. (Citing cases) * * *."

For other cases of the same purport as the above cited case, see Thein v. Silver Investment Co., 87 Cal.App.2d 308, 196 P.2d 956; Porter v. Barrett, 233 Mich. 373, 206 N.W. 532, 42 A.L.R. 1267 and Murdock

Acceptance Corp. v. Aaron, 190 Tenn. 416, 230 S.W.2d 401.

Defendants were free to record their mineral conveyances with Commissioners and thereby place the responsibility on Commissioners of notifying them of proceedings to forfeit the certificate of purchase. By failing to do so they placed themselves in the same relative position as one who loses his interest in property not coming under the jurisdiction of the Commissioners by failing to record the instrument evidencing his interest with the county clerk. Such incidents are always regrettable but nevertheless represent cases in which this Court cannot properly grant relief.

Affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, JOHNSON, BLACKBIRD, JACKSON and BERRY, JJ., concur.