## FINCH v. PULASKI OIL CO.

No. 14529—Opinion Filed June 16, 1925.

1. **Contracts—Rescission by Consent—Proof by Conduct.**

Consent of parties to a rescission of a contract may be implied from the circumstances and conduct of the parties with respect to the subject-matter, and need not be shown by an express agreement.

2. **Same—Oil and Gas—Termination of Drilling Contract.**

Where A. and B. enter into a contract, whereby A. agrees to drill an oil well to a certain sand, unless oil is discovered in paying quantities at a lesser depth, and an oil producing sand is encountered at a lesser depth, and A. and B. agree that the sand encountered will produce in paying quantities and the well is shot by agreement and put on the pump, and B. assigns a one-half interest in the leasehold, the consideration expressed in the contract to be paid to A. for drilling the well, and a check for $5,000, which under the terms of the contract had been put up by A. in escrow, guaranteeing the faithful performance of the contract, is returned to A., held, that such agreements, acts, and conduct on the part of the parties terminate the contract.

3. **Same—Evidence of Abandonment.**

Evidence showing that an off-set well had been drilled to the sand agreed on in the contract and abandoned as a dry hole is not competent to justify the abandoning of the contract, but is competent as a circumstance shedding light on the acts and conduct of the contracting parties and in explanation of their efforts to make a well out of the oil bearing sand encountered at a lesser depth.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by F. L. Finch against Pulaski Oil Company. Judgment for defendant, and plaintiff appeals. Affirmed.

C. H. Rosenstein, for plaintiff in error.

Robinson & Mieher and Tashley & Rambo, for defendant in error.

Opinion by JONES, C. This cause was instituted in the district court of Tulsa county by plaintiff in error, F. L. Finch, as plaintiff, against the defendant in error, Pulaski Oil Company, defendant, to recover certain sums of money as damages in two different causes of action based on an alleged breach of a drilling contract, wherein the defendant had agreed to drill an oil and gas well on a certain tract of land upon which the plaintiff held an oil and gas lease. The agreement provided that the well should be drilled to what was known as the Tucker sand, unless oil or gas was discovered in paying quantities at a lesser depth.

Plaintiff's first cause of action is based on failure of the defendant to drill to the Tucker sand, and is for the sum of $20,-000, the alleged value or cost of drilling an oil and gas well to the Tucker sand, and in his second cause of action he alleges that when the well had been drilled to what is known as the Bartlesville sand, the plaintiff was led to believe, from statements and representations of the defendant, that it would produce oil in commercial quantities, and that by reason of such representations on the part of the defendant, plaintiff delivered to the defendant an assignment of a one-half interest in the leasehold upon which said well had been drilled, pursuant to the terms of the drilling contract which further provided that in the event oil or gas was produced in paying quantities that the defendant was to convey or assign to the plaintiff a one-half interest in all machinery, rigs, and oil well appliances as a part consideration for the interest assigned in the lease contract, and that having assigned the interest in the leasehold, as provided, was entitled to an assignment of one-half interest to the machinery and appliances; that defendant has failed and refused to make such an assignment; that the value of said machinery and oil well appliances is $15,000; and that this plaintiff is entitled to recover of and from the defendant under his second cause of action one-half of such value, or $7,500. And prays for judgment for a sum aggregating $27,500 on the two causes of action.

In answer to plaintiff's petition the defendant avers and sets up as a defense to plaintiff's first cause of action, that when the Bartlesville sand was reached that plaintiff and defendant each believed that oil had been encountered in paying quantities,

and agreed that the well should be shot and placed on the pump, and the plaintiff delivered to the defendant an assignment of a one-half interest of the said leasehold, and plaintiff also delivered to defendant its certified check for $5,000, which had been placed in escrow with the assignment to be paid to the plaintiff as liquidated damages in case of failure to drill as agreed, and further avers that said contract was consummated and terminated; that thereafter it was determined that said well was not a commercial well, and it was orally agreed that they would endeavor to proceed with the drilling until the Tucker sand was reached, and after some considerable effort it was determined by the defendant that it was impracticable on account of the cave caused by the shooting of said well. and the difficulties encountered, to proceed further with the drilling and so notified the plaintiff, and also notified the plaintiff that they intended to plug the well and abandon same; that plaintiff made no specific objections and that said well was abandoned and plugged, and that the written contract sued upon by the plaintiff was terminated by the agreement relative to the application of the well when the Bartlesville sand was encountered, and while no formal plea of tender is made, it is disclosed by the evidence that the defendant tenders back to the plaintiff the assignment delivered by the plaintiff conveying to the defendant a one-half interest in said leasehold; the well having failed to produce, the leasehold is of no value. and of no further concern.

On the trial of the cause to the court and jury, judgment was rendered in favor of the defendant and against the plaintiff, from which judgment the appellant prosecutes this appeal and sets forth various specifications of error, but practically bases his right to a reversal of the case. first, on the error of the court in overruling plaintiff's motion for a directed verdict on plaintiff's first cause of action upon the theory that the defendant offered no evidence in opposition to same, and under the state of the record appellant contends that the undisputed evidence shows that he was entitled to recover the sum of $15,000 on account of the failure of the defendant to complete the well to the Tucker sand.

Appellant cites numerous authorities in support of the proposition that if the evidence on behalf of plaintiff is sufficient to prove the cause of action, and there is no substantial evidence offered by the defendant upon any material issue in the cause, it is the duty of the trial court to direct the

jury to return a verdict in favor of the plaintiff. Appellee does not controvert this rule of law, but contends that the facts in this case will not authorize the application of same, and in this contention we concur. The facts, as disclosed by the record, show that under the terms of the drilling contract entered into by plaintiff and defendant, the consideration passing from plaintiff to the defendant was an assignment of one-half interest in the leasehold upon the tract of land upon which the well was drilled, to be delivered to the defendant on the completion of the well. The defendant, aside from the execution of the drilling, was also to convey to the plaintiff, in the event oil was produced in paying quantities, a one-half interest in all of the machinery, tools, and oil well appliances used in connection with the drilling operations and production; in other words, if a producing well was discovered, plaintiff and defendant were to become equal partners in the leasehold and all machinery and appliances and in the production, constituting a mining partnership. When the sand was reached, known as the Bartlesville sand, it appears from the record that both parties were of the opinion that it would produce in paying quantities, and that the well would produce 25 or 30 barrels per day. We think the evidence, together with the circumstances surrounding the case, clearly justifies the conclusion that it was agreed between the plaintiff and the defendant that the well should be shot, placed on the pump, and was accepted by all parties concerned as a completion of the contract, and that the contract in fact was terminated at that time; the plaintiff delivered to the defendant the assignment of a one-half interest in the leasehold, and permitted the defendant to withdraw the certified check for $5,000, which had been agreed would be the damages sustained by reason of failure on the part of the defendant to complete the well as agreed upon, and we think the court was clearly justified in holding that the contract was consummated or terminated at this time, so far as the written contract was concerned, and that the plaintiff was not entitled to recover any sum as damage for the failure on the part of the defendant to drill to the Tucker sand.

The second proposition urged by appellant is that of the error of the court in the admission of certain testimony wherein the defendant was permitted to prove, in conformity to certain averments set forth in his answer, that at the time the Bartlesville sand was encountered it was agreed by the parties here concerned that the well

be shot and placed on the pump, that the well known as the Markham well within 400 feet of the well here in controversy had been completed to the Tucker sand and abandoned as a dry hole and this fact is set up in the defendant's answer, not as a defense or justification for failure to drill to the Tucker sand, but as a circumstance and as one of the reasons which caused both plaintiff and the defendant to endeavor to make a well out of the well in controversy at the time the Bartlesville sand was encountered, which made a showing of oil, and no doubt had much to do with causing the parties to enter into the agreement which they did enter into, and deterred them from the further effort to reach the Tucker sand at that time. The evidence complained of was simply proof of the fact that the Markham well was an off-set well to this well; that it had been drilled to the Tucker sand and abandoned as a dry hole, and while this would not be sufficient to have justified the defendant in abandoning its contract, we think the evidence was competent and material under the state of the pleadings, as a circumstance which was calculated to influence the parties to this controversy in making the settlement which they did, and which led them to believe that it would in all probability be useless to continue the drilling, and that it would be judicious, if possible, to make a producing well out of the Bartlesville sand.

Appellant next complains of certain instructions given by the court in the trial of the case, to wit, paragraphs three and nine of the court's instructions, wherein the jury was instructed that the original contract might be terminated or modified by an agreement of both parties.—

"Either by expressed words or by the acts of both parties, from which there arose an implied agreement of an estoppel."

The substance of the instructions complained of is that portion of same which instructs the jury that an agreement to terminate or to abandon the well might be established by acts and conduct on the part of the parties sufficient to constitute an implied contract or an agreement as well as by express words and declarations.

The appellant contends that the instruction given and complained of was not supported by the evidence, and therefore it was error on the part of the court to give an instruction involving the issue of the termination of the contract by implication, and cites many authorities in support of this contention, that an instruction given where there is no evidence to support it

and an issue not raised by the pleadings, nor the evidence, is error. With this law we have no controversy, but this rule of law has no application to the facts in this case. We find abundant evidence justifying the verdict of the jury and the judgment of the court, wherein they found that the contract was terminated, and aside from the direct proof of this fact, all the physical facts and circumstances surrounding the case sustain the conclusion that the contract was terminated.

Section 5077, Comp. St. 1921, provides:

"A party to a contract may rescind the same in the following case only; Fifth— By consent of all other parties."

And from the acts and conduct of the parties to this controversy it is clear that they agreed to the termination of the contract at the time the Bartlesville sand was reached, and that it was generally understood by all parties concerned that said contract was terminated, granting there was no express agreement, the facts are abundant to show an agreement and consent by implication.

"A contract will be treated as abandoned where the acts of one party inconsistent with its existence are acquiesced in by the other." 13 Corpus Juris 601.

And this consent may be evidenced by the acts of the parties from which would arise an implied agreement. Id., 591 and 601.

Section 5031, Comp. St. 1921, provides:

"An implied contract is one the existence and terms of which are manifested by conduct."

Aside from an express agreement, the acts and conduct of the parties are clearly sufficient to establish an implied agreement, and the judgment should be affirmed.

By the Court: It is so ordered.

· Note.—See under (1) 13 C. J. p. 601. (2) 13 C. J. p. 601. (3) 13 C. J. p. 772.