**FIRST NAT. BANK OF BUTLER v. WELCH et al.**

No. 15158—Opinion Filed Dec. 15, 1925.

Rehearing Denied Oct. 26, 1926.

**1. Public Lands—Mortgage Filed in State Land Office not Constructive Notice.**

A mortgage on land sold by the state, executed by the holder of the certificate of purchase, filed in the office of the Commissioners of the Land Office is not constructive notice to subsequent purchasers in good faith.

**2. Same — Certificate of Purchase—Rights of Innocent Assignee.**

Where public land of this state has been sold by the Commissioners of the Land Office and the certificate of purchase issued, a conveyance of the land is effected by a proper assignment of the certificate of purchase; and when the assignee of such certificate of purchase receives the same in good faith for a valuable consideration without any knowledge of the existence of an unrecorded mortgage, he takes the land free of any lien created by the unrecorded mortgage.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Roger Mills County; T. P. Clay, Judge.

Action by W. H. Welch et al. against First National Bank of Butler, Okla. Judgment for plaintiffs, and defendant appeals. Affirmed.

Wilbur J. Holleman, Thos. H. Owen, and A. E. Darnell, for plaintiff in error.

A. J. Welch, for defendants in error.

Opinion by RAY, C. The land involved in this suit was purchased from the School Land Department by James A. McFarland making the initial payment and executing his certificate of purchase notes for deferred payments, and receiving a certificate of purchase as required by the laws of the state governing the sale of school lands. January 23, 1920, McFarland, joined by his wife, transferred and assigned the certificate of purchase to A. L. Smith, E. T. Sumrall, Frank Mitchell, and M. H. Fariss in satisfaction of a note and mortgage on the land held by them. Smith, Sumrall, Mitchell, and Fariss, by their attorney, presented the assignment of the certificate of purchase to the Commissioners of the Land Office, tendered the amount of the deferred payments due the state, and requested that patent be issued to them. They were then and there notified that a mortgage of McFarland's interest in the land, executed by McFarland and his wife to the First National Bank of Butler, to secure their note in the sum of $3,000, was on file. Notwithstanding the fact that the mortgage of the First National Bank had been recorded in the office of the School Land Department, the deferred payments were made by McFarland's assignees and patent issued as requested. The patent was filed for record February 27, 1922, in Roger Mills county where the land was situated. March 29, 1922, Smith, Sumrall, Mitchell, and Fariss conveyed the land by warranty deed to W. H. Welch, but before that deed was recorded, the First National Bank of Butler, on the 10th day of April, 1922, caused its mortgage to be filed and recorded in the office of the county clerk of Roger Mills county. Thereafter, W. H. Welch commenced this suit against the First National Bank of Butler to have the bank's mortgage adjudged to be void as against him, to remove the

cloud upon his title, and to quiet title in him.

The defendant answered by general denial except as to certain admissions. It admitted that patent was issued by the Commissioners of the Land Office, but alleged that at the time it was issued, the patentees, Smith, Sumrall, Mitchell, and Fariss, had actual and constructive notice of its mortgage, and agreed with the Commissioners of the Land Office to assume payment of the defendant's mortgage, and alleged that the sale by them to W. H. Welch, plaintiff, was not made in good faith and was not an actual sale; that no consideration was paid; that the plaintiff, W. H. Welch, took the deed with full knowledge of the defendant's mortgage, without consideration, and for the purpose of defeating defendant's mortgage lien up n the land. It alleged that the patentees, Smith, Sumrall, Mitchell and Fariss, grantors of plaintiff, had an interest in the action and were necessary parties to a complete determination of the issues. By proper reply issues were joined on the new matter set out in defendant's answer. By agreement of parties, and by leave of court, Smith, Sumrall, Mitchell and Fariss filed a supplemental petition as parties plaintiff, and admitted that they had an equitable interest in the subject-matter of the action, in that they had given to the plaintiff, Welch, a warranty deed and that they had a lien on the land for the balance of purchase price due. The case was tried without a jury and resulted in judgment for plaintiff. From this judgment the defendant, First National Bank of Butler, appealed.

One of the contentions of the bank is that under sections 9331, 9385 and 9396, C. S. 1921, a mortgage on school land filed in the office of the Commissioners of the Land Office is constructive notice to subsequent purchasers and incumbrancers. Section 9331 relates to the transfer of purchaser's rights. It provides, in substance, that all purchasers of school land shall have the right to transfer or assign all their rights, title, and interest in and to such land, and that such assignment shall be in form and executed and acknowledged as required by the laws governing conveyances, with the proviso that before delivering the patent, such assignment, to be valid, shall be duly recorded in a proper book kept by the Commissioners of the Land Office for that purpose. The balance of the section refers to the manner and method of transfer of the purchaser's interest where the assignee of the certificate of purchase assumes payment of deferred payments and executes a new certificate of purchase note. That section contains no reference to mortgages or their registration.

Section 9385 refers to the assignment of school land leases as security for indebtedness. It provides that no assignment of the school land lease as security shall be valid unless filed for record in the office of the Commissioners of the Land Office within 30 days after its execution. This section has no application to the transfer of certificates of purchase, but only applies to school land leases prior to sale of the land.

Section 9396 is as follows:

"All of the records in possession, control, care and custody of the Commissioners of the Land Office are hereby declared to be public records, and certified copies thereof are admissible in evidence in the courts of this state. Any person shall be entitled to receive a certified copy of any instrument on record with the Commissioners of the Land Office on the payment of a fee as prescribed by the commission."

It will be observed that no reference is made in either section to mortgages on lands after sale by the School Land Commissioners. Section 9326 provides that in a sale of school lands a certificate of purchase reciting the conditions of such purchase, shall be issued to every purchaser immediately upon the execution of the contract of purchase, and that the certificate of purchase shall be entitled to record, as evidence of same, under the provisions of the law of conveyances.

Section 9321 provides that the Commissioners of the Land Office shall, as soon as possible after the sale of the lands, transmit to the clerk of the county in which the lands are located, a detailed description of each part of the land so sold, and the names of the purchasers, and that the clerk shall extend the same upon the tax roll for the purpose of taxation, and the same shall then become subject to taxation the same as other lands, and the taxes assessed thereon collected and enforced in like manner the same as other lands.

It is clear from these provisions of the statute, that the purchaser of school lands becomes the owner subject to the state's lien for deferred payments and the registration of the certificate of purchase is notice of such ownership. In the absence of a statute otherwise providing, it is clear that a mortgage on such lands must be recorded in the office of the county clerk where the land is situated to constitute constructive notice. For these reasons we hold that the filing of the bank's mortgage in the office of the School Land Commissioners was not constructive notice of the bank's mortgage.

It being conceded that the patentees had actual notice of the bank's mortgage at the time they applied for a patent, and before making the final payment due the state and receiving the patent, the question then is, Did such actual notice render their title subject to the bank's mortgage?

McFarland had bought the land from the School Land Department of the state. He had executed his notes to the state for the deferred payments and was the holder of the certificate of purchase. He was indebted to Smith, Sumrall, Mitchell, and Fariss in the sum of $2,900 secured by a mortgage on his interest in the land, subject, of course, to the state's lien for deferred payments. He, joined by his wife, transferred and assigned all his rights, title, and interest in the land to Smith, Sumrall, Mitchell, and Fariss in satisfaction of his indebtedness to them. No question is raised as to the good faith of that transaction. It is conceded that they accepted the assignment in satisfaction of McFarland's debt to them without any knowledge of the existence of the defendant's mortgage. They applied to the School Land Department for a patent to the land, at the same time presenting their assignment of McFarland's interest in the land and tendering payment of McFarland's indebtedness to the state. At that time they received actual notice of the defendant's mortgage. Notwithstanding the fact that the defendant's mortgage was on file recorded in the office of the School Land Commissioners, patent was issued to Smith, Sumrall, Mitchell, and Fariss.

The validity of the transfer and assignment of McFarland's interest in the land to Smith and associates, or of the patent executed by the state to them, is not questioned. Neither is the right of McFarland to sell or mortgage his interest in the land represented by the certificate of purchase questioned. Defendant's unrecorded mortgage was upon that interest in the land held by McFarland. By the assignment of the certificate of purchase the assignees acquired all of McFarland's interest in the land. Having acquired McFarland's interest in the land by his transfer and assignment, joined in by his wife, more than one year after the issuance of the certificate of purchase, they were entitled to patent upon discharge of the state's lien for deferred payments by payment of the principal and interest due. The only payment made by them, after notice of the defendant's unrecorded mortgage, was the amount of the notes due on the purchase price held by the state and by law made a first lien upon the land.

Section 9326, C. S. 1921, provides that the state shall have a first lien upon all lands sold, together with all improvements and appurtenances thereunto belonging, until all payments, both principal and interest, are made, and upon such payments being made, the Commissioners of the Land Office shall execute to each purchaser a patent in fee simple. When the amount due the state was paid and patent issued, it was not a purchase and sale of the land. The land was sold to McFarland by the state when he made the initial payment, executed his notes to the state for deferred payments, and received the certificate of purchase. The land then became taxable as the property of McFarland. The payment to the state by Smith and associates was merely in satisfaction of the state's lien for the balance of the purchase price agreed to be paid by McFarland. For these reasons, we think Smith, Sumrall, Mitchell, and Fariss purchased the land from McFarland without notice, either actual or constructive, and the land was not impressed with the bank's mortgage lien in their hands.

It is contended that when Smith, Sumrall, Mitchell, and Fariss applied to the School Land Commissioners for the issuance of the patent, the commissioners refused to issue the patent until the bank's mortgage was satisfied, and that they had agreed to pay the amount due the bank in satisfaction of the mortgage, and, upon such agreement, the patent was issued. The evidence does not sustain such contention. The evidence shows that the attorney who represented the applicants for the patent insisted that the patent should issue, notwithstanding the bank's mortgage, and agreed to assume all responsibility for its issuance; that is, agreed to accept the patent standing on his legal right to contest the validity of the mortgage. It is contended for the bank that as the plaintiff had only paid $100 on the purchase price, and executed notes for the balance of the purchase price which had not been paid at the time of trial, his only interest in the land to be protected by the decree was that of the $100 paid; but having reached the conclusion that title vested in the patentees free of the bank's mortgage, it follows that the land was not impressed with the lien in the hands of their grantee.

The evidence shows that the mortgage to the First National Bank was executed by McFarland and his wife to secure a preexisting indebtedness, unsecured, so far as the record discloses. At the time the mortgage was executed, the bank knew that McFarland was negotiating a sale of the land

to Smith, Sumrall, Mitchell, and Fariss in satisfaction of his indebtedness to them secured by a mortgage on the land. A reasonable inference to be drawn from the evidence in support of the finding of the trial court is that the bank induced McFarland and wife to conceal from Smith, Sumrall, Mitchell, and Fariss, the fact that the mortgage had been executed to the ·bank. The mortgage was executed to the bank on the 20th day of February, and was filed of record with the Commissioners of the Land Office on the 23rd day of February. After execution of the mortgage to the bank at Butler on the 20th day of February, McFarland and wife went to Leedy, in Dewey county, and assigned their certificate of purchase to the holders of the mortgage on the land in satisfaction of their indebtedness, without disclosing to the assignees that they had mortgaged the land to the bank at Butler.

Upon the whole record, we think no reversible error was committed by the trial court, and the judgment is affirmed. ·

By the Court: It is so ordered.

Note.—See 32 Cyc. p. 1098.