218 F.2d 1
 MAGNOLIA PETROLEUM COMPANY, a Texas corporation, Appellant,
v.
The CARTER OIL COMPANY, a West Virginia corporation, and State of Oklahoma, ex rel. Commissioners of the Land Office, Appellees.
 No. 4801.
 United States Court of Appeals Tenth Circuit.
 August 30, 1954.
 Rehearing Denied February 11, 1955.
 
 James E. Horigan, Oklahoma City, Okl. (Earl A. Brown and Chas. B. Wallace, Dallas, Tex., were with him on the brief), for appellant.
 Lynn Adams, Oklahoma City, Okl. (Forrest M. Darrough and A. L. Deaton, Tulsa, Okl., and Paul H. Long, Oklahoma City, Okl., were with him on the brief), for appellee Carter Oil Co.
 A. M. DeGraffenried, Oklahoma City, Okl. (R. H. Dunn, Oklahoma City, Okl., was with him on the brief), for appellee Commissioners of Land Office of State of Oklahoma.
 Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.
 MURRAH, Circuit Judge.
 
 
 1
 Magnolia Petroleum Company appeals from a judgment quieting title in the Commissioners of the Land Office of the State of Oklahoma as the owner of the fee simple title and in The Carter Oil Company as the owner of oil and gas leases executed to it by the Commissioners covering land forfeited to the Commissioners by defaulted certificate of purchase holders. Magnolia counterclaimed to the quiet title action instituted by Carter, interpleading the Commissioners as third-party defendants, contending that as the record owner of one-half of the minerals under the forfeited land without notice of the forfeiture, it was entitled to have its title quieted as against Carter and the Commissioners.
 
 
 2
 The controverted property is part of the original Oklahoma school land grant placed under the control of the Commissioners. Enabling Act, June 16, 1906, c. 3335, § 7, 34 Stat. 272; Okla.Const. Art. 6, § 32. By mesne conveyances B. J. Ebenkamp and Willis Tooley obtained equitable title to the land from the Commissioners, evidenced by Certificates of Purchase. The State retained legal title to secure the balance of the unpaid purchase price with the understanding that a patent would issue upon payment of the full purchase price and that forfeiture would result from failure to make annual deferred payments. Title 64 O.S. § 187, R.L.1910, § 7152; Laws 1916, ch. 36, p. 96, § 2; Laws 1933, ch. 91, p. 163, § 7; Stevens v. Patten, 174 Okl. 582, 50 P.2d 1106, Ch. 57, S.L.Okla. 1923-24; Dale v. Deal, 159 Okl. 111, 14 P.2d 363.
 
 
 3
 As holders or owners of certificates of purchase, Ebenkamp and Tooley executed mineral deeds to an undivided one-half of the minerals under the land, ultimately assigned to Magnolia by mesne conveyances dated June 26, 1930. These deeds were recorded in Beaver County where the land was located.
 
 
 4
 Thereafter, upon default by Tooley, the Commissioners on September 16, 1935, served notice of cancellation upon Tooley and his lien holder; and on May 31, 1941, the Commissioners served notice of cancellation upon Ebenkamp and his party in possession, as provided by Ch. 57, S.L.1923-24, §§ 1 and 2. No notice of cancellation of the certificates of purchase was served upon Magnolia, and it had no actual knowledge of cancellation until Carter requested quit-claim deeds covering the minerals. Magnolia refused to quit claim on the grounds that it had claimed title to the minerals since 1930, and this quiet title action ensued.
 
 
 5
 The Trial Court held that the mineral deeds executed by certificate holders Ebenkamp and Tooley, not being approved by the Commissioners of the Land Office in accordance with § 191, O. S. Title 64, R.L.1910, § 7156; Laws 1910-11, ch. 44, p. 87 § 1; Laws 1915, ch. 210 § 8, and the terms of the certificates of purchase, did not convey to or vest in Magnolia any right, title or interest in the lands as against the State of Oklahoma; and not having acquired any interest in the lands, Magnolia was not entitled to notice of cancellation under §§ 1 and 2 of Ch. 57, S.L. of Okla., 1923-24. It concluded therefore that cancellation of the certificates, being in conformity with the applicable statutes, operated to forfeit all right, title and interest of the certificate holders and any and all persons claiming by, through or under them, including the Magnolia Petroleum Company; that upon such forfeiture the State of Oklahoma was revested with the fee simple title to the lands in question free and clear of any interest of the certificate holders and Magnolia, and that Carter acquired valid oil and gas leases from the State of Oklahoma after forfeiture.
 
 
 6
 § 191 O.S. Title 64, under which the original certificates of purchase were issued, provides in material part:
 
 
 7
 "Any purchaser of lands under the provisions of this act shall have the right to transfer or assign all his rights, title and interest in and to such lands * * *; provided, before delivery of patent, such assignment, to be valid, shall be duly recorded in a proper book, kept for that purpose by the Commissioners of the Land Office; * * *. Upon the sale and transfer of the interest of a holder of a certificate of purchase in and to the land covered thereby, if the same is approved by the Commissioners of the Land Office, and upon the payment of any principal or interest due to date of transfer, and the surrendering of the certificate of purchase transferred, the Commissioners of the Land Office shall issue and deliver to the transferee a new certificate of purchase upon the execution by the transferee of a new certificate of purchase note for the deferred payments, and the note, executed by the holder of the certificate of purchase transferred, shall be canceled and surrendered to him."
 
 
 8
 On the reverse side of the certificates issued in pursuance of the statute appears a transfer certificate to be signed by the transferors showing that they do "assign * * * all of (their) right, title and interest" in the lands described in the Certificate, "said transfer and sale being made subject to the approval and acceptance of the Commissioners of the Land Office of the State of Oklahoma."
 
 
 9
 In construing the statute as applying to a conveyance of the mineral interests by the certificate holders and requiring the approval of the Commissioners, the Trial Court construed the critical word "all" as including any part of the interest of the certificate holders; and thus concluded that "approval and acceptance of the Commissioners of the Land Office" was a prerequisite to the validity of the conveyance of a lesser interest than the whole. The Trial Court's conclusions in this respect are buttressed by evidence in the record to the effect that for at least seven or eight years preceding the trial it had been the policy of the Commissioners of the Land Office not to recognize the validity of a conveyance of any interest in the lands covered by a certificate of purchase unless the same was accepted and approved by the Commissioners of the Land Office in accordance with the terms of the certificate.
 
 
 10
 Absent any other authoritative interpretation of the state statute, we should of course be prone to give great weight to the administrative interpretation, Great Northern Life Ins. Co. v. Read, 10 Cir., 1943, 136 F.2d 44, reversed on another point, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121; Cities Service Gas Co. v. Peerless Oil & Gas Co., 203 Okl. 35, 220 P.2d 279, 290, especially in view of the affirmation of the learned Trial Court. But we think the interpretation placed upon this statute by recent decisions of the Supreme Court of Oklahoma renders the administrative interpretation of the statute untenable.
 
 
 11
 Berryman v. Producers Corp., 206 Okl. 24, 240 P.2d 1111 and Johnson v. Farmers' Union Co-op Royalty Co., 205 Okl. 478, 238 P.2d 831 leave no doubt that § 191 O.S. Title 64 is applicable only to a conveyance by a certificate holder of "`all his rights, title and interest' in the land, which is equivalent to an assignment of the certificate of purchase", Berryman v. Producers Corp., supra, 240 P.2d at page 1113, and that the statute is inapplicable to a conveyance of less than all of his right, title and interest in the land; that the recording of a conveyance of a mineral interest by a certificate holder in the county where the land is located is constructive notice and binding as against all those claiming under reissued certificates of purchase after assignment or forfeiture. And this is so although the mineral conveyance was not approved or accepted by the Commissioners of the Land Office as provided in the statute and the certificates of purchase.
 
 
 12
 Indeed Appellees concede as much. They suggest, however that the Commissioners of the Land Office were not a party to the proceedings in either the Johnson or the Berryman case, and earnestly contend that the construction placed upon § 191 in those cases was not intended to apply with binding effect on the State of Oklahoma.
 
 
 13
 True, the Commissioners of the Land Office were not parties to the proceedings in the Johnson and Berryman cases, but we think there can be no doubt that the rule of those cases has equal application to the Commissioners. To hold otherwise would result in the anomalous and wholly untenable situation in which one claiming under a reissued certificate would have good title against all in the chain of title except the source. We cannot believe that the Oklahoma court intended any such incongruous statutory construction.
 
 
 14
 If § 191 leaves a certificate holder free to convey less than all of his interest in the land without the approval of the Commissioners there can be no warrant or authority for saying that the approval of the Commissioners is requisite to the validity of a conveyance which is valid against all other holders under the certificate issued by the Commissioners. In other words, if the statute is inapplicable to the conveyance, it can grant no authority in the Commissioners to require their consent and approval therefor, and a record of such conveyance in the county where the land is located is constructive notice to the Commissioners as well as all other parties. We are constrained to hold that Magnolia acquired an undivided one-half interest in the minerals under the lands involved here and that the recording of the mineral deeds in the county where the land is located is constructive notice to all parties, including the Commissioners of the Land Office.
 
 
 15
 The question remains whether the cancellation of the certificates of purchase without notice to Magnolia operated to divest it of its mineral interests in the lands covered by such certificates.
 
 
 16
 Section 1 of Ch. 57, S.L.Okla., 1923-24 provides in substance that when any person, firm or corporation holding a certificate of purchase to any public lands in the State of Oklahoma shall be in default of any annual deferred payments due the State for a period of two years, the Commissioners of the Land Office shall cause notice to be given to "all delinquent purchasers, or holders or owners of certificates of purchase," that if the delinquent deferred payments are not paid within ninety days from the date of service of such notice, the Commissioners of the Land Office shall declare "all rights obtained by the purchaser or transferee under said sale and the certificate of purchase issued thereon, forfeited to the State." Section 2 of the act provides in material part that, "The service of the notice provided for in the foregoing section shall be made by registered mail, to the record owner, or lien holder of record and to the person or persons in possession thereof."
 
 
 17
 The Trial Court construed these two sections together to mean that the State of Oklahoma was required to give notice only to the holders or owners of certificates of purchase and that no notice of cancellation of such certificates of purchase was required to be given to the Magnolia Petroleum Company.
 
 
 18
 Magnolia takes the position on appeal that the "record owner" referred to in § 2 on whom service of notice provided for in the foregoing section shall be made, is to be taken in its ordinary accepted meaning, and when so construed necessarily includes the Magnolia Petroleum Company whose interests were duly recorded in the county where the land was situated; and that any other construction would amount to a taking of its property without due process of law. In short, Magnolia would construe the words "record owner" in § 2 as referring to someone in addition to the delinquent purchasers, holders or owners of certificates of purchase in § 1.
 
 
 19
 Invoking the rule of ejusdem generis, Appellees say that § 2 merely provides for the service of the notice to be given in § 1 and that the general term "record owner" in § 2 should not be construed to enlarge or amplify the specific class designated as purchasers or holders or owners of certificates of purchase in § 1; that as a cognate term of those words, it should be confined to those persons so designated. It is also said that as trustees of vast acreage held for the benefit of the school children of Oklahoma, the Commissioners of the Land Office were not intended to be burdened with the search of the records to determine outstanding interests and notifying all of the holders thereof; that these considerations prompted the legislature to provide an expeditious quasi-judicial procedure for the cancellation of the certificates of delinquent certificate holders or owners. The Commissioners call attention to the fact that they conveyed no interest to Magnolia and received no consideration therefor; that Magnolia took the mineral interests subject to the statutes governing the issuance and cancellation of the certificates of purchase, and all Magnolia acquired was a defeasible equitable interest subject to forfeiture with the cancellation of the certificates of purchase; that the burden was upon Magnolia to see that the payments were made by the certificate holders in order to protect their interests.
 
 
 20
 It is significant to note that in 1943 the Oklahoma legislature amended §§ 1 and 2, Ch. 57, S.L.Okla., 1923-24 to consolidate the two sections and to provide for service of notice of forfeiture upon, "The lawful owner of a certificate of purchase contract, his heirs, executors, administrators, devisees, trustees and assigns." Laws 1943, p. 157, § 5. Under the present act Magnolia would undoubtedly be entitled to service of notice of cancellation, and the Commissioners of the Land Office would thus be required to search the records. The amendment of the statute to require service on the assignees of the holders or owners of the certificates of purchase is susceptible of a legislative recognition of the failure of the prior legislation to so provide. Sutherland Statutory Construction, 3rd Edition, § 1930 and § 5110, with cases cited, 50 Am.Jur., Statutes, § 275, p. 262. It might also be taken as a legislative recognition of a neglected duty to accord due process of law to the owner of a vested interest in the forfeited lands. 11 Am. Jur., Constitutional Law, § 151, pp. 832-3.
 
 
 21
 The use of the words "record owner" in § 2 to refer to the persons on whom service provided for in § 1 shall be served, admittedly "inept", is sufficiently ambiguous to justify resort to extraneous considerations for the ascertainment of their meaning. 50 Am.Jur., Statutes, § 225, pp. 204-6; Sutherland Statutory Construction, 3rd Edition, §§ 4502-3. And we should have no great difficulty agreeing with the contentions of the Appellees and the construction placed upon the words "record owner" by the Trial Court were it not for the serious constitutional considerations of due process which that construction poses.
 
 
 22
 The Trial Court had no difficulty with due process because of its conviction that Magnolia acquired no property interest to constitutionally protect. But having decided that Magnolia did acquire a vested property right, we are now faced with the necessity of determining whether a taking of that right without notice can be reconciled with due process of law.
 
 
 23
 In this posture we are brought to the salutary canon of construction under which courts faced with two constructions of a statute, one of which would comport with its constitutionality, the other of which would cast doubt, the court should always presume that the legislature intended the observance of all constitutional requirements. This is especially true where vested property rights are sought to be forfeited under the statute to be construed. 11 Am.Jur. Constitutional Law, § 97, pp. 725-32, with cases cited in extensive footnotes; Merrill on Notice, § 543, p. 562; Foster v. Marshall, 141 Okl. 246, 284 P. 882.
 
 
 24
 The procedure provided in the statutes for the cancellation of certificates and the forfeiture of equitable interests evidenced thereby, although born of expediency and nurtured by the administrative hand, is nevertheless quasi-judicial in its character, Dale v. Deal, 159 Okl. 111, 14 P.2d 363; Wilhite v. Cruce, 70 Okl. 70, 172 P. 962; and the constitutional requirements for procedural due process are no less exacting. When "the administrative body acts judicially, notice and an opportunity for hearing are indispensable to due process," Merrill on Notice, § 517, p. 506; and the spirit of the law requires that all doubts concerning due process should be resolved in favor of notice. Merrill on Notice, § 543, p. 562.
 
 
 25
 It is no distortion to construe the words "record owner" as meaning all parties having an interest of record. It comports with procedural due process; it respects the time-honored rule against forfeitures; and we are constrained to so construe it.
 
 
 26
 Appellees also deny Magnolia's claim of right in the property on the ground that the Commissioners have adversely held the property for the statutory period of fifteen years. 12 O.S.A. § 93(4). It was stipulated that the State of Oklahoma caused the controverted lands to be shown upon the tax rolls of the county where the land was located as its land and collected and retained the rents and profits therefrom. But the title to the minerals has been severed as a separate estate and the Trial Court found that they had not been developed for oil and gas purposes. Mere possession of the surface by the State without assertion of dominion over the minerals does not constitute adverse possession of the minerals. Noble v. Kahn, 206 Okl. 13, 240 P.2d 757, 35 A.L.R.2d 119.
 
 
 27
 The judgment is reversed and remanded with directions to accord Magnolia the right of redemption.
 
 
 28
 PHILLIPS, Chief Judge (concurring).
 
 
 29
 I fully concur in the opinion of Judge MURRAH. However, I desire to state what appear to me to be additional reasons for holding that the deeds in Magnolia's chain of title were valid against and binding upon the Commissioners of the Land Office,[1] and an alternative reason for holding that Magnolia was a "record owner" within the meaning of § 5492 Okl.Stat.1931 and entitled to be given the notice provided for in § 5491 Okl.Stat.1931.
 
 
 30
 Magnolia delivered to the Commissioners the original and one copy of each of the several deeds in its chain of title and the filing fees for recording them in the office of the Commissioners. All of such deeds were filed for record in the office of the Commissioners in 1930, long before the proceedings for cancellation were instituted by the Commissioners.
 
 
 31
 A certificate of purchase vests in the holder of the certificate equitable title to the lands conveyed by the certificate, with the right to possess, use, and enjoy the lands.[2]
 
 
 32
 The State retained the mere legal title, with a lien on the land to secure the deferred payments and the right to forfeit the certificate holder's rights in the event of default in payment of the deferred payments. 64 Okl.St.Ann. § 187.
 
 64 Okl.St.Ann. § 191 provides:
 
 33
 "Any purchaser of lands under the provisions of this act shall have the right to transfer or assign all his rights, title and interest in and to such lands, and such assignment shall be in form and executed and acknowledged as required under the laws governing conveyances; provided, before delivery of patent, such assignment, to be valid, shall be duly recorded in a proper book, kept for that purpose by the Commissioners of the Land Office; and provided, further, that where the purchaser of such lands has a husband or wife, such husband or wife shall join in the assignment of any such contract. Upon the sale and transfer of the interest of a holder of a certificate of purchase in and to the land covered thereby, if the same is approved by the Commissioners of the Land Office, and upon the payment of any principal or interest due to date of transfer, and the surrendering of the certificate of purchase transferred, the Commissioners of the Land Office shall issue and deliver to the transferee a new certificate of purchase upon the execution by the transferee of a new certificate of purchase note for the deferred payments, and the note, executed by the holder of the certificate of purchase transferred, shall be canceled and surrendered to him."
 
 
 34
 The last sentence, which contains the clause, "if the same is approved by the Commissioners of the Land Office," was added by an amendatory act of 1910-1911. That sentence also incorporates amendments made in 1915, which are not here material.
 
 
 35
 Thus, it will be seen that before the 1910-1911 amendment a purchaser of state lands had "the right to transfer or assign all his rights, title and interest in and to such lands," R.L.1910, § 7156, and the only conditions imposed were that the assignment should be in the form and executed and acknowledged as required by the laws covering conveyances, and that in order to be valid the assignment must be recorded prior to the delivery of patent in a proper book, kept for that purpose by the Commissioners. No approval by the Commissioners was essential to validity.
 
 
 36
 The last sentence of § 191, supra, does not make approval by the Commissioners essential to validity, but essential only if the original certificate is to be surrendered, the original certificate note covering deferred payments cancelled, and a new certificate note executed by the purchaser and a new certificate of purchase delivered to the purchaser. As stated by the Supreme Court of Oklahoma, the last sentence "refers to the manner and method of transfer of the purchaser's interest where the assignee of the certificate of purchase assumes payment of deferred payments and executes a new certificate of purchase note."[3] The reason for approval in such cases is obvious. There is a complete novation and a discharge of the original debtor. The State has the right to determine whether it will accept a new debtor in place of the old and release the latter.
 
 
 37
 It is true that § 191, supra, if literally construed, would apply only to transfers of "all [the] rights, title and interest" of the certificate holder. However, it is a well-settled principle, frequently applied to grants of authority or definitions of right, that "Major continet in se minus." (The greater includes the less within itself.)[4]
 
 
 38
 And in a recent case, Stevens v. Patten, 174 Okl. 582, 50 P.2d 1106, the Oklahoma Supreme Court expressly held that a certificate holder had the right under § 9331, C.O.S.1921, § 191, supra, to convey an undivided interest in the minerals in the land covered by the certificate of purchase.
 
 
 39
 It is my conclusion that under § 191, supra, the holder of a certificate may transfer an undivided interest by an instrument executed and acknowledged as required by the Oklahoma statutes governing conveyances, and that such assignment is valid if duly recorded in a book kept for that purpose by the Commissioners, prior to delivery of patent, and that approval of an assignment under such section by the Commissioners is only necessary when there is a release of the original certificate note, cancellation of the original certificate, the execution of a new certificate note by the assignee and the issuance of a new certificate of purchase to the assignee.
 
 
 40
 For the additional reasons indicated above, it is my opinion that the mineral deeds through which Magnolia claims were valid and binding on the State of Oklahoma; and that, if recording of the deeds in Magnolia's chain of title in the county real estate records did not constitute it a record owner within the meaning of § 5492, supra, then the recording of such deeds in the office of the Commissioners constituted Magnolia a record owner within the meaning of § 5492, supra, and entitled it to the notice provided for in § 5491, supra.
 
 
 
 Notes:
 
 
 [1]
 Hereinafter referred to as the Commissioners
 
 
 [2]
 Stevens v. Patten, 174 Okl. 582, 50 P. 2d 1106, 1110 and cases there cited; Johnson v. Farmers' Union Co-op. Royalty Co., 205 Okl. 578, 238 P.2d 831; Berryman v. Producers Corp. of Nevada, 206 Okl. 24, 240 P.2d 1111, 1112; First National Bank of Butler v. Welch, 119 Okl. 270, 250 P. 100, 102; State v. Red River Lumber Co., 109 Minn. 185, 123 N. W. 412, 413
 
 
 [3]
 First National Bank of Butler v. Welch, 119 Okl. 270, 250 P. 100, 101
 
 
 [4]
 2 Bouv.Law Dict., Rawle's Third Revision, p. 2144
 
 
 
 41
 PICKETT, Circuit Judge (dissenting).
 
 
 42
 In Oklahoma, when school lands are sold under deferred payment contracts, the legal title remains in the State, but the equitable title is conveyed to the purchaser who is entitled to the possession, rents, and profits. He is the owner against the world, except the State. Stevens v. Patten, 174 Okl. 582, 50 P.2d 1106. He becomes the owner of the land, subject to the lien of the State for the deferred payments. 64 Okl.St.Ann. § 187; First Nat. Bank of Butler v. Welch, 119 Okl. 270, 250 P. 100. He may convey by deed an undivided interest in the land which is good against anyone acquiring legal title to the lands thereafter, if the deed has been duly recorded in the county where the land is located. Stevens v. Patten, supra. He may mortgage the land and one thereafter taking an assignment of the contract takes it subject to the mortgage lien if the latter has been properly recorded. Winter v. Schneider, 120 Okl. 299, 251 P. 609. He may by deed convey the minerals in and under the lands and the deed is good, if it has been duly recorded, against a subsequent assignee of the contract who has surrendered the original contract and obtained a reissue thereof. Berryman v. Producers Corp. of Nevada, 206 Okl. 24, 240 P.2d 1111; Johnson v. Farmers Union Co-op. Royalty Co., 205 Okl. 478, 238 P.2d 831. In all of these cases the conveyances by the purchaser were upheld, but in all of them the terms of the contract had been fulfilled and the contract owner was entitled to a patent.
 
 
 43
 It is apparent from the Oklahoma decisions that when school lands are sold under deferred payment contracts, the relation between the State, the contract owners, and those who acquire rights through the owners, is substantially the same as though the State were a private citizen and had sold the property by a contract of sale. It is conceded here that there was a default in the terms of the contracts and that all the rights of the original contract owners and their assignees were cancelled out. Magnolia held a deed to one-half the mineral rights in and under the lands which had been executed by the owner of the contract before cancellation. This deed had been duly recorded, and Magnolia contends that the State could not cancel its interests without notice. If Magnolia is not entitled to notice of cancellation under the statute or the contract, its rights were lost when the contract was cancelled because whatever interest it acquired in the property came through the contract. Magnolia was not in privy with the State and its remedies were limited to its transaction with the certificate holder.
 
 
 44
 Section 1 of Chapter 57 of the Session Laws of Oklahoma, 1923-4, provided that when a holder of a certificate of purchase shall be in default of deferred payments for a certain period, the Commissioners of the Land Office shall, "cause notice to be given all delinquent purchasers, or holders or owners of certificates of purchase". It further provided that if such delinquent payments were not paid within ninety days from the date of the service of the notice, the Commissioners, "shall declare all rights obtained by the purchaser or transferee under said sale and the certificate of purchase issued thereon, forfeited to the State." It will be noted that this section referred only to the notice which was to be given to delinquent purchasers, or holders or owners of certificates of purchase. Section 2 of the same Act dealt with the service of the notice which was required under Section 1, and stated that such notice, "shall be made by registered mail, to the record owner, or lien holder of record and to the person or persons in possession thereof." It is evident that these sections were designed to provide a simple and expeditious method of clearing the state's title to school land upon a default in the conditions of outstanding certificates of purchase by the certificate holders. Nowhere in the statute is there any indication that one acquiring an interest in the lands from the certificate holder is entitled to notice unless we construe the term "record owner" as used in Section 2 as applying to everyone who has recorded a conveyance. This would place upon the Land Commissioners the burden of searching the record before cancellation and serving notice upon all who appeared to have acquired an interest in the lands regardless of the nature of their interest.[1] I think that if the Legislature had had this in mind it would have said so. Such a statutory construction, it appears to me, is a reasonable one, particularly when to hold otherwise will overturn an administrative interpretation of almost thirty years. Such administrative interpretation should be given great weight by the courts and should not be overturned without cogent reasons. Skelly Oil Co. v. Jackson, 194 Okl. 183, 148 P.2d 182; Lincoln National Life Insurance Co. v. Read, 194 Okl. 542, 156 P.2d 368, affirmed 325 U.S. 673, 65 S.Ct. 1220, 89 L.Ed. 1861.
 
 
 45
 The fact that the owner of a mineral deed has good title against everyone except the State does not create an anomalous or untenable situation, because he cannot obtain a complete title until the obligations to the State under the contract are fulfilled.
 
 
 46
 Such an interpretation does not have any constitutional inhibitions. All rights obtained through the owner of the contract are contingent upon the fulfillment of the terms of that contract, and no vested interests are created in third parties in the property until the terms of the contract have been fulfilled. Asher v. Hull, 207 Okl. 478, 250 P.2d 866; Stuart v. Westerheide, 144 Okl. 150, 289 P. 721; Seguin v. Maloney, 198 Or. 272, 253 P.2d 252, 256 P.2d 514, 35 A.L.R.2d 1412; Clinton v. Miller, 124 Mont. 463, 226 P.2d 487; Peterson v. Paulson, 24 Wash.2d 166, 163 P.2d 830; California Delta Farms v. Chinese American Farms, 207 Cal. 298, 278 P. 227, appeal dismissed, 280 U.S. 520, 50 S.Ct. 67, 74 L.Ed. 590.
 
 
 47
 Only vested rights are protected by the Due Process Clause of the Constitution. 12 Am.Jur., Constitutional Law, Sec. 650. Magnolia had no vested right as against the State. Whatever title it had was contingent upon the performance of the contract by the certificate holder. See Pearsall v. Great Northern Ry. Co., 161 U.S. 646, 16 S.Ct. 705, 40 L.Ed. 838; Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483; Anderson-Prichard Oil Corp. v. Corporation Commission, 205 Okl. 672, 241 P.2d 363, appeal dismissed 342 U.S. 938, 72 S.Ct. 562, 96 L.Ed. 698; Crump v. Guyer, 60 Okl. 222, 157 P. 321, 2 A.L.R. 331; Fahey v. O'Melveny & Myers, 9 Cir., 200 F.2d 420, certiorari denied Mallonee v. Fahey, 345 U.S. 952, 73 S.Ct. 863, 97 L.Ed. 1374; United States v. Nebo Oil Co., 5 Cir., 190 F.2d 1003; Mizer v. Kansas Bostwick Irrigation District No. 2, 172 Kan. 157, 239 P.2d 370; Dunham Lumber Co. v. Gresz, 71 N.D. 491, 2 N.W.2d 175, 141 A.L.R. 60; 11 Am.Jur., Constitutional Law, Sec. 370.[2]
 
 
 48
 For the reasons stated, I would affirm the judgment.
 
 
 
 Notes:
 
 
 [1]
 During the trial the District Court made this observation:
 "Now, if you can take this conveyance of half interest, Mr. Ebenkamp can convey each acre to a different person. So when the State of Oklahoma, when the certificate holder hasn't paid, goes to foreclose, they had to notify three hundred and twenty people. It would be practically impossible for them to foreclose their mortgage.
 "In other words, this is a contract and it is a personal matter between the Commission and the man that they give it to. There are a lot of provisions as to who they can even do business with and they certainly, under the statute, have a right to choose their person or see that he meets certain requirements equally with all other citizens."
 
 
 [2]
 In United States v. Nebo Oil Co., supra, [190 F.2d 1008] the court said:
 "True, there is no rule or principle known to our system of the law whereby private property can be taken from one person and conveyed to another for his private use and benefit. It is equally true that remedial legislation frequently has an effect upon the control and disposition of property. The principal restriction upon legislation of this nature appears to be that vested rights must not be disturbed. But many rights, privileges and immunities having to do with ownership under a specific state of the law, cannot be regarded as vested rights. To be a vested right it must have become a title, legal or equitable, to the present or future use and enjoyment of property."