MAGNOLIA PETROLEUM COMPANY, a
corporation, Plaintiff in Error,

v.

The STATE of Oklahoma on Relation of the
COMMISSIONERS OF the LAND OFFICE
of said State, Defendant in Error.

No. 37437.

Supreme Court of Oklahoma.

July 2, 1957.

Rehearing Denied Feb. 18, 1958.

James E. Horigan, Oklahoma City, for plaintiff in error.

R. H. Dunn, A. M. DeGraffenried, N. A. Gibson, Oklahoma City, for defendant in error.

DAVISON, Justice.

This suit was instituted by the State of Oklahoma ex rel. Commissioners of the Land Office, as plaintiff, against the Magnolia Petroleum Company, as defendant, for the purpose of quieting the title to a quarter section of land in Woodward County. The parties will be referred to in the order in which they appeared in the trial court which was inversely to that in which they here appear.

The land involved was originally a part of the grant made to the State by the Federal Government shortly before statehood for the benefit of the common schools of the state. In 1913, it was sold at public auction to one Carl Buhr, who made a partial payment of the purchase price and was issued a certificate of purchase thereof. In 1930, the assignee and then owner of the certificate of purchase conveyed an undivided one half interest in the minerals underlying said premises and, by mesne conveyances, the defendant oil company herein became the owner of said mineral estate. All the various mineral conveyances were duly filed for record in the office of the County Clerk of said Woodward County and the originals and copies were then forwarded to the Secretary of said School Land Commission and were recorded in the journals kept for that purpose. No approval by the Commission was obtained of said conveyances. In 1936, after the then owner of the certificate of purchase had defaulted in the payments due on the purchase price and after statutory notice to said assignee and owner, an order was made and entered by the School Land Commission cancelling the said certificate. No notice thereof was given to the defendant herein. On July 26, 1955, this suit was filed seeking a decree quieting plaintiff's title against any claim or interest of the defendant in or to the real estate involved. From a judgment and decree for plaintiff, defendant has perfected this appeal.

The ultimate issue for determination by this court is: Was the order cancelling the certificate of purchase valid and binding as against defendant in the absence of service upon it of the statutory notice of delinquency and to show cause why said certificate should not be cancelled?

To properly understand the import of the decisions of this Court bearing on the subject, attention must first be directed to what is now designated as 64 O.S.1951 § 191, providing as follows:

"Any purchaser of lands under the provisions of this act shall have the right to transfer or assign all his rights, title and interest in and to such lands, and such assignment shall be in form and executed and acknowledged as required under the laws governing conveyances; provided, before delivery of patent, such assignment, to be valid, shall be duly recorded in a proper book, kept for that purpose by the Commissioners of the Land Office; and provided, further, that where the purchaser of such lands has a husband or wife, such husband or wife shall join in the assignment of any such contract. Upon the sale and transfer of the interest of a holder of a certificate of purchase in and to the land covered thereby, if the same is approved by the Commissioners of the Land Office, and upon the payment of any principal or interest due to date of transfer, and the surrendering of the certificate of purchase transferred, the Commissioners of the Land Office shall issue and deliver to the transferee a new certificate of purchase upon the execution by the transferee of a new certificate of purchase note for the deferred payments, and the note, executed by the holder of the certificate

of purchase transferred, shall be canceled and surrendered to him."

■ The quoted section of the statutes consists of two parts—the original act and the last sentence above quoted which was added by amendments in 1911 and 1915. The two are clearly separable in application. By the first, the holder of the certificate of purchase is authorized to convey "all his rights", etc., and to assign the certificate. But in order for the assignment to be valid and binding on the Commissioners and for the patent to issue to the assignee, the assignment "shall be duly recorded in a proper book, kept for that purpose by the Commissioners of the Land Office." By virtue of the 1915 amendment, the Commissioners are authorized to cancel the note and obligation of the prior owner of the certificate and to issue a new certificate to the assignee upon the approval of the Commissioners of the assignment and after payment of any amounts due and the execution of a new note and the surrender of the original certificate. That a conveyance of a mineral interest in the land by the certificate holder need not be approved by the Commissioners in order to be valid and binding, is no longer an open question. First Nat. Bank of Butler v. Welch, 119 Okl. 270, 250 P. 100, 101; Winter v. Schneider, 120 Okl. 299, 251 P. 609; Stevens v. Patten, 174 Okl. 582, 50 P. 2d 1106; Johnson v. Farmers' Union Co-Op Royalty Co., 205 Okl. 478, 238 P.2d 831; Berryman v. Producers' Corp. of Nevada, 206 Okl. 24, 240 P.2d 1111. Although the cited cases deal only with the rights of individuals (not with rights of the State) and the situations presented were those wherein payment of all amounts due the state had been made and patents had been issued, they are, nevertheless, conclusive of the fact that "the purchaser of school lands becomes the owner subject to the state's lien for deferred payments and the registration of the certificate of purchase is notice of such ownership" (first pronounced in First National Bank of Butler v. Welch, supra [119 Okl. 270, 250 P. 101.]). That conclusion is in harmony with other statutory provisions dealing with such lands. It was intended that such a title would pass to the certificate holder, that the lands should become immediately subject to taxation. 64 O.S.1941 § 185. That the interest of the state after conveyance of said lands and issuance of certificate of purchase should be a lien rather than a retained title was recognized particularly by section 187 of said title 64 O.S.1941.

■■ This brings us to the crux of this litigation, namely: In the special proceeding which constituted a foreclosure of the state's lien, was it necessary that notice thereof be given to the grantee of a mineral estate in said lands in order to foreclose that interest? Although they have since been supplanted (by 64 O.S.1951 § 216.1 et seq. enacted in 1943) the statutes with reference to notice of delinquency or default and to show cause why a specified certificate of purchase should not be cancelled, which were in effect at the times here involved were secs. 211 and 212 of Title 64 O.S.1941, originally enacted as laws of 1923-24, ch. 57, secs. 1 and 2. The latter section, dealing with service of notice, is readily divisible into three provisions: 1. Service of notice by registered mail is required to be had upon "the record owner or lien holder of record and the person or persons in possession"; 2. Service of notice by publication is provided for when the address or the post office of "the purchaser or transferee" is unknown; 3. Right of appeal was afforded to any "purchaser or transferee." The persons designated in each of the subdivisions must, of necessity, have been intended to be the same. There would be no necessity for substituted service by publication upon any one other than those upon whom actual service of notice had been required. Nor could there be a right of appeal in any one other than parties to the foreclosure, of whom the court had acquired jurisdiction by service of process or notice and in whom there exist-

ed a right to contest the forfeiture or foreclosure. There can be no doubt, therefore, that those persons enumerated in provision 1 were intended to include all purchasers and transferees.

We do not here determine what owners were designated in the statute as "record" owners; whether it referred to those owners whose conveyances were on record in the office of the County Clerk of the county where the land was situate; or whether it referred to such owners who had recorded their conveyances with the Commissioners of the Land Office as designated in 64 O.S.1941 § 191. The mineral conveyances, under which the defendant here claimed, were of record in both offices. Therefore we do not consider what position the defendant would have been in had it not filed the conveyances with the Commissioners of the Land Office. Having so properly filed its conveyances with the Secretary of the School Land Commission and said conveyances having been properly recorded in said office, Magnolia was a "record owner" and entitled to notice and an opportunity to contest the forfeiture or to make redemption. Admittedly no notice was served on said defendant and consequently its "rights were not foreclosed." First Nat. Bank of Sayre v. Sanders, 169 Okl. 192, 35 P.2d 889.

The conclusion thus reached is not only a logical interpretation of the statutes specifically identified above, but it avoids any conflict with constitutional provisions. The same conclusion was reached by the Circuit Court of Appeals in an identical situation (Magnolia Pet. Co. v. Carter Oil Co., 10 Cir., 218 F.2d 1). However, the opinion in that case determined some questions based upon the effect of filing the conveyances with the Commissioners of the Land Office and the effect of not filing them. As pointed out above, those matters are irrelevant to the issues presented.

In its pleadings, the defendant herein tendered payment of all amounts found to be equitably due to plaintiff and by stipulation agreed to pay the same. The record does not contain sufficient facts from which we can make a determination of the exact amount.

Therefore, the judgment is reversed and the cause remanded with directions to enter judgment for defendant but only after proof has been submitted disclosing payment by defendant of such sum as is found to be equitably due under the terms of the tender and stipulation.

CORN, V. C. J., and HALLEY, JOHNSON, WILLIAMS, and CARLILE, JJ., concur.

WELCH, C. J., dissents.

BLACKBIRD and JACKSON, JJ., concur in part and dissent in part.

JACKSON, Justice (concurring in part and dissenting in part).

My dissent goes to the last two paragraphs of the majority opinion. Therein it is pointed out that defendant (Magnolia Petroleum Company) tendered payment of all amounts found to be equitably due to plaintiff and agreed to pay the same. The majority reverses the cause with directions to enter judgment for defendant after proof has been submitted disclosing payment by defendant of such sum as is found to be equitably due under the tender and stipulation.

I find nothing in the record to indicate that the Commissioners of the Land Office have stipulated as to the amount "equitably due" the plaintiff (Commissioners of the Land Office). Their position is that defendant was not entitled to notice prior to the cancellation of the certificate and that cancellation without notice cancelled all Magnolia's interest in the minerals.

The majority opinion recognizes that the case of Magnolia Petroleum Company v. Carter Oil Co., 10 Cir., 218 F.2d 1, presented a situation identical to the case now before this court. In that case the judgment was reversed in favor of Magnolia

**192**

and remanded with directions to accord Magnolia the right of redemption. The "right of redemption" is not "spelled out" in that opinion nor in the majority opinion in this case. The parties to this litigation have not briefed the question of what rights Magnolia will have when accorded the right of redemption. Therefore the proper disposition of this case is to reverse the judgment and remand the case to the trial court with directions to accord Magnolia the right of redemption.

Serious questions are raised in this controversy and not answered. How much will Magnolia be required to pay? Is the amount due to be determined by law or by equity? Will the Commissioners be entitled to demand the full amount that was due and to become due on their contract with the certificate holder, together with interest as provided in that contract? If so, will Magnolia be entitled to claim the fee title as well as the minerals? What will the trial court do with 64 O.S.1951 § 186, wherein it is provided:

> "Whenever a certificate for the sale of any of said lands has been cancelled, it shall be the duty of the Commissioners of the Land Office to notify the clerk of the county in which such lands are located of said cancellation and thereafter such lands shall not be listed for taxation but in the event of the redemption of any such lands the party making such redemption shall pay as taxes and in addition to all other charges an amount equal to the taxes last levied thereon for each year such land was not listed for taxation, together with such interest and penalty as would have been charged if the same had been regularly listed and taxed."

If we would reverse the case and accord Magnolia the right of redemption the foregoing questions could be presented to the trial court for consideration after both parties have had an opportunity to brief these questions. For the foregoing reasons I must respectfully dissent in part, as indicated.